

DA 07-0314

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 181

LAWRENCE E. JUDD,

        Plaintiff and Appellant,

   v.

THE BURLINGTON NORTHERN AND SANTA
FE RAILWAY COMPANY, a corporation,
JAMES E. ROBERTS, JON M. MOYERS,
DAVID P. LEGARE and JOHN DOE, attorneys
for Burlington Northern Santa Fe,

        Defendants and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
                In and For the County of Broadwater, Cause No. DV 05-88
                Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Wade J. Dahood and Jeffrey W. Dahood, Knight, Dahood, Everett & Sievers,
                 Anaconda, Montana

        For Appellee:

                Chad Adams and Leo Berry, Browning, Kaleczyc, Berry & Hoven, P.C.,
                Helena, Montana

                            Submitted on Briefs:  April 16, 2008
                                 Decided:  May 28, 2008

Filed:

_____
                             Clerk
Justice Brian Morris delivered the Opinion of the Court.

¶1     Lawrence E. Judd (Judd) appeals from an order of the First Judicial District Court, Broadwater County, granting a motion for summary judgment filed on behalf of the Burlington Northern and Sante Fe Railway Company and its attorneys James E. Roberts, Jon M. Moyers, and David P. Legare.  We affirm.

¶2     We review the following issues on appeal:

¶3     *Did the District Court correctly determine as a matter of law that BNSF had probable cause to bring an indemnification action against Judd?*

¶4     *Did the District Court correctly determine that Judd's complaint failed to allege an ulterior motive necessary to support his abuse of process claim?*

¶5     *Did the District Court correctly determine that Judd's claim for emotional distress must fail either as a remedy for his underlying claims or as an independent action?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶6     We will refer in this opinion to the Burlington Northern and Sante Fe Railway Company and its attorneys collectively as "BNSF" for purposes of clarity.  Judd owned and operated a weed spraying business known as "Judd's Services."  BNSF and Judd entered into a "vegetation control contract."  The contract called for Judd to spray for noxious weeds and to conduct pre-emergent spraying on BNSF land.  Judd and BNSF entered into the contract on December 31, 1996, for a five year period set to expire on December 31, 2001.

¶7     The contract contained an indemnification clause.  The clause provided that Judd would indemnify BNSF for claims brought against BNSF that arose from Judd's acts, omissions, or failure to perform under the contract.  The clause covered injuries to BNSF

2

employees. The clause maintained Judd's obligation to indemnify BNSF even where the injury "was occasioned by or contributed to by the negligence" of BNSF or its employees.

¶8 John Ransdell (Ransdell), a BNSF employee, stepped into a hole and injured his back while working at the rail yard located in Great Falls, Montana, in June of 1999. Ransdell reported the cause of his injury as a "hole in [the] ground covered by high grass" on an injury report. Ransdell filed a Federal Employer's Liability Act (FELA) lawsuit against BNSF in March of 2000.

¶9 BNSF hired Neil Consultants, Inc., in August of 2000 to conduct a site investigation and topographic survey of the location of the hole. The survey concluded that the hole lay on BNSF property. BNSF and Ransdell settled the FELA suit for $485,000.

¶10 BNSF sued Judd in United States District Court seeking indemnification under the vegetation control contract. BNSF alleged that Judd's failure to spray the weeds obscured the hole that caused Ransdell's injuries. Judd moved for summary judgment. The court denied Judd's motion. The court determined that factual disputes existed regarding Judd's duty to spray the area surrounding the hole, whether Judd had sprayed in that area, and whether BNSF had an obligation to direct Judd to spray in that area. The case proceeded to a jury trial. The jury returned its verdict in Judd's favor.

¶11 Judd filed suit against BNSF in the First Judicial District Court, Broadwater County. Judd alleged that the indemnity action filed by BNSF constituted a malicious prosecution and an abuse of process. Judd's complaint also contained a claim against BNSF for the

3

infliction of emotional distress.  BNSF filed a motion for summary judgment.  The District Court granted BNSF's motion.  Judd appeals.

## STANDARD OF REVIEW

¶12     We review de novo a district court's grant of summary judgment.  *Hughes v. Lynch*, 2007 MT 177, ¶ 7, 338 Mont. 214, ¶ 7, 164 P.3d 913, ¶ 7.  We use the same criteria applied by the district court under M. R. Civ. P. 56.  *Hughes*, ¶ 7.  We will affirm a district court's grant of summary judgment where no genuine issues of fact exist and the moving party is entitled to judgment as a matter of law.  *Hughes*, ¶ 7.  We review conclusions of law for correctness.  *Hughes*, ¶ 8.

## DISCUSSION

## ISSUE ONE

¶13     *Did the District Court correctly determine as a matter of law that BNSF had probable cause to bring an indemnification action against Judd?*

¶14     Judd argues that the District Court granted BNSF's motion for summary judgment on the malicious prosecution claim contrary to Montana law.  Judd asserts that a court must present to the jury the determination of the probable cause element of a malicious prosecution claim.  BNSF contends that Montana law allows a district court to determine the existence of the probable cause element.

¶15     A successful malicious prosecution claim requires a plaintiff to demonstrate that: (1) the defendant instigated, prosecuted, or continued a judicial proceeding; (2) the defendant pursued the proceeding against the plaintiff; (3) the defendant acted without probable cause;

4

(4) the defendant acted with malice; (5) the judicial proceeding terminated favorably for the plaintiff; and (6) the plaintiff suffered damage. *Hughes*, ¶ 12. A court may enter judgment for the defendant as a matter of law if the plaintiff fails to establish any of the above elements by prima facie evidence. *Hughes*, ¶ 12.

¶16 We adopted in *Hughes* the probable cause standard for a malicious prosecution claim set forth in § 675 of the Restatement (Second) of Torts. *Hughes*, ¶ 16. We stated in *Hughes* that probable cause exists to initiate a civil suit when a party reasonably believes that facts exist and either: (1) the party correctly or reasonably believes that the facts support a valid claim under the applicable law; or (2) the party takes this position in reliance upon the advice of counsel, sought in good faith and received after a full disclosure of all relevant facts within the party's knowledge and information. *Hughes*, ¶ 16.

¶17 BNSF had contracted with Judd for weed and grass spraying services. The vegetation control contract required Judd to conduct pre-emergent spraying. The contract's indemnification clause provided that Judd would indemnify BNSF for claims that arose from Judd's omissions or failure to perform under contract. The clause required Judd to indemnify BNSF even if the injury "was occasioned by or contributed to by the negligence" of BNSF.

¶18 Ransdell filed suit against BNSF after Ransdell stepped into a hole and sustained injuries. Ransdell reported that high grass covered the hole. BNSF had a topographical survey conducted of the location of the hole. The survey indicated that the hole lay on BNSF property.

5

¶19     BNSF argued in its indemnification action that the hole would not have become a hazard if Judd had sprayed properly the area surrounding the hole. The vegetation control contract provided a sufficient basis for BNSF reasonably to believe that Judd had to indemnify BNSF for any injuries occasioned by Judd's failure to eliminate tall grasses and weeds from BNSF property. The topographic survey provided a sufficient basis for BNSF reasonably to believe that the hole that caused Ransdell's injuries lay on BNSF property. A valid claim under the contract could have existed if BNSF could have proven these facts at trial.

¶20     Judd argues that our decision in *Hughes* allows a district court to determine that probable cause existed as a matter of law only when a litigant's belief in that probable cause stems from an independent report or investigation of the matter. Our decision in *Hughes* contains no such requirement. We set no limitations in *Hughes* on the grounds upon which a plaintiff might rely when forming a belief that probable cause exists. We require only a reasonable belief in the existence of facts and a reasonable belief that those facts support a valid claim. *Hughes*, ¶ 16.

¶21     BNSF provided sufficient evidence to demonstrate that it reasonably believed that Ransdell fell into the hole on BNSF property as a result of the fact that tall grasses had concealed the hole. BNSF also provided sufficient evidence to demonstrate that it reasonably believed that the circumstances surrounding Ransdell's injuries supported a valid claim under the indemnification clause of the vegetation control contract. Judd proffered evidence successfully to undermine BNSF's indemnification claim at the trial of the

6

indemnification claim in federal court. Judd again proffered evidence to attack the merits of BNSF's indemnification claim in support of his motion for summary judgment in this matter. Judd proffered no evidence, however, that demonstrated that BNSF held an unreasonable belief with regard to either the existence of the necessary facts or the legal support for BNSF's indemnification claim. *Hughes*, ¶ 16. The District Court correctly determined as a matter of law that Judd could not prove that BNSF lacked probable cause when it filed its indemnification claim.

**ISSUE TWO**

¶22 *Did the District Court correctly determine that Judd's complaint failed to allege an ulterior motive necessary to support his abuse of process claim?*

¶23 Judd argues that BNSF committed an abuse of process when BNSF brought the indemnification claim. Judd asserts that no causal connection existed between Judd's duty to spray grasses and weeds and the existence of the hole in the ground. Judd contends that BNSF used the indemnity suit in an attempt "to shift its loss" to Judd, despite the fact that Judd had no duty to keep BNSF property safe.

¶24 Judd misapprehends the nature of an abuse of process claim. We have articulated two elements that a plaintiff must prove in order to succeed on an abuse of process claim: (1) an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular course of the proceeding. *Seltzer v. Morton*, 2007 MT 62, ¶ 57, 336 Mont. 225, ¶ 57, 154 P.3d 561, ¶ 57. A plaintiff must establish that the defendant attempted "'to use process to coerce the [plaintiff] to do some collateral thing which [the plaintiff] could not be legally and

regularly compelled to do.'" *Seltzer*, ¶ 57 (quoting *Brault v. Smith*, 209 Mont. 21, 29, 679 P.2d 236, 240 (1984)). We have characterized the occurrence of an abuse of process as a situation where "process [is] put to a use perverted beyond its intended purpose." *Brault*, 209 Mont. at 29, 679 P.2d at 240.

¶25 Judd proffered no evidence to the District Court to demonstrate that BNSF had used the indemnity action for an ulterior purpose or to coerce Judd to perform a collateral act. Judd notes that BNSF suffered a loss in its settlement with Ransdell. Judd contends that BNSF used the indemnity suit in an attempt to "shift its loss" to Judd by pursuing a claim under the vegetation control contract. Judd fails to recognize that the intent to shift one's losses to another constitutes the essential purpose of an indemnification claim. *Durden v. Hydro Flame Corp.*, 1999 MT 186, ¶ 25, 295 Mont. 318, ¶ 25, 983 P.2d 943, ¶ 25. Judd's own contentions undermine his claim that BNSF initiated and pursued the indemnification suit for an improper purpose.

¶26 Judd correctly characterizes BNSF's lawsuit as an attempt to force Judd to indemnify BNSF for its loss. BNSF applied this force, however, in a legal and regular manner. BNSF alleged facts that demonstrated that it brought the indemnification claim for the legitimate purpose of attaining all available recourse under its contract with Judd. The District Court correctly determined that Judd's allegations demonstrated that BNSF did not commit an abuse of process. *Seltzer*, ¶ 57.

**ISSUE THREE**

8

¶27    *Did the District Court correctly determine that Judd's claim for emotional distress must fail either as a remedy for his underlying claims or as an independent action?*

¶28    Judd argues that the District Court failed to address his claim for intentional infliction of emotional distress.  BNSF counters that the court correctly granted BNSF's motion for summary judgment with respect to Judd's claims for emotional distress as a remedy due to the failure of Judd's underlying claims.  BNSF also contends that the court correctly determined that no independent action for the intentional infliction of emotional distress existed.  BNSF argues that a party may assert an independent action for the intentional infliction of emotional distress only when the intentional act is unlawful or improper.

¶29    We need not reach an issue concerning a plaintiff's alleged damages when we affirm a district court's grant of summary judgment in favor of the defendant.  *See Shiplet v. First Sec. Bank of Livingston*, 234 Mont. 166, 174, 762 P.2d 242, 247 (1988) (overruled on other grounds by *Sacco v. High Country Independent Press*, 271 Mont. 209, 896 P.2d 411 (1995)).  Judd's claim for emotional distress damages as a remedy for his underlying claims of malicious prosecution and abuse of process must fail in light of our conclusion that the District Court correctly granted summary judgment in favor of BNSF with respect to those claims.

¶30    Judd contends that an independent action for the intentional infliction of emotional distress exists in light of BNSF's intentional act of prosecuting an indemnification claim against Judd.  We previously have stated that an actor does not engage in outrageous or extreme conduct simply by exercising a legal right.  *Lachenmaier v. First Bank Systems,*

9

*Inc.*, 246 Mont. 26, 35, 803 P.2d 614, 619-20 (1990). We quoted in *Lachenmaier* comment g of the Restatement (Second) of Torts, § 46. *Lachenmaier*, 246 Mont. at 35, 803 P.2d at 620. Comment g addresses privileged actions and provides: "'The actor is never liable [. . . where] he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.'" *Lachenmaier*, 246 Mont. at 35, 803 P.2d at 620.

¶31     We revised our approach to intentional infliction of emotional distress claims in our decision in *Sacco*. We eliminated in *Sacco* the need to demonstrate "outrageous" conduct when advancing a claim for the intentional infliction of emotional distress. *Sacco*, 271 Mont. at 237, 896 P.2d at 427-28. Our decision in *Sacco* left intact, however, the principle that a privileged action cannot become the basis for such a claim. Restatement (Second) of Torts, § 46, cmt. g (1965). The District Court properly granted summary judgment in favor of BNSF with respect to Judd's claims for emotional distress.

¶32     Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ JIM RICE
/S/ JAMES C. NELSON
/S/ JOHN WARNER