# FILED

January 14 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 13-0216

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 9

ROBERT SPOJA,

       Plaintiff and Appellant,

  v.

DUSTE WHITE, BRIAN CHARLES
TIPP, and TIPP & & BULEY, P.C.,

       Defendants and Appellees.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DV-2010-1136
                Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Robert Spoja, self-represented; Billings, Montana

       For Appellee:

              Torrance L. Coburn, Tipp & Buley, P.C.; Missoula, Montana

                          Submitted on Briefs:  December 3, 2013
                                  Decided:  January 14, 2014

Filed:

              _____
                           Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 *Did the District Court err when it granted judgment as a matter of law, finding Spoja had presented no evidence of malicious prosecution?*

¶2 *Did the District Court err when it granted summary judgment on Spoja's abuse of process claim?*

¶3 *Did the District Court err when it granted summary judgment on Spoja's attorney deceit claim?*

¶4 *Did the District Court err when it required Spoja to pay the costs incurred and paid by Defendant Tipp, including costs associated with Tipp's expert witness?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 The present civil suit stems from two prior legal proceedings; a sentencing hearing and another civil suit. In February, 2005, Public Defender Robert Spoja (Spoja) represented Duste White (White) regarding his probation revocation in Fergus County. At the sentencing hearing, Spoja recommended that White's sentence run concurrently with sentences from other jurisdictions. The court sentenced White to a term of five years commitment to the Department of Corrections (DOC) but made no reference as to whether the sentence was to be served concurrently with other sentences. The court clerk's minute entry, however, notes that White's sentence was to be served concurrently with a sentence in Cascade County. Records at the prison calculated White's discharge date to be June 1, 2010. White petitioned the District Court to correct his sentence, citing the clerk's minute entry. On December 18, 2008, upon the motion of the deputy county attorney, a court entered an Amended Re-Sentencing Order. That order allowed White to serve his term concurrently with other sentences, which resulted in a discharge date of October 28, 2007 rather than June 1, 2010. White was subsequently released from Montana State Prison on December 24, 2008.

2

¶6 Based on this sentencing discrepancy, White believed that he was incarcerated for fourteen months longer than his actual sentence. Bryan Tipp of Tipp & Buley, P.C., represented White in a civil action against Spoja, Spoja's father, and the law firm of Spoja's father for breach of contract, malpractice and negligence related to the sentencing. Tipp brought the claim after meeting with White and reviewing the clerk of court's minutes from the sentencing hearing. Spoja retained counsel to defend against the suit. The parties disagreed about the applicable statute of limitations and whether White was unduly incarcerated. In March 2010, Tipp received transcripts of White's sentencing hearing. The transcripts showed that the sentencing court had not ordered concurrent sentences. Tipp moved to dismiss the case in June 2010, but never informed Spoja that he had dismissed the case.

¶7 All of this gave rise to the present lawsuit. Spoja filed a civil action for claims of attorney deceit, malicious prosecution, and abuse of process against Duste White, Tipp & Buley, and Tipp in his individual capacity. Spoja contended that Tipp had filed White's civil suit in clear violation of the statute of limitations and without any examination of the facts. Spoja further alleged that Tipp intentionally failed to inform him that the suit had been dismissed. Spoja deposed Tipp and Tipp's expert on attorney standard of care, Cynthia Ford (Ford).

¶8 The District Court entered summary judgment against Spoja's attorney deceit and abuse of process claims. After Spoja rested his case, the District Court granted Tipp's motion for judgment as a matter of law on the malicious prosecution claim. Finally, the District Court ordered Spoja to reimburse Tipp for filing fees, depositions of parties, and the

3

deposition of Ford. Spoja now appeals the dismissal of his claims and the assignment of costs.

## STANDARDS OF REVIEW

¶9 We review de novo a court's judgment as a matter of law. *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 18, 336 Mont. 105, 152 P.3d 727. Rulings on summary judgment are reviewed de novo. *Svaldi v. Anaconda-Deer Lodge County*, 2005 MT 17, ¶ 12, 325 Mont. 365, 106 P.3d 548.

## DISCUSSION

¶10 *Did the District Court err when it granted judgment as a matter of law, finding Spoja had presented no evidence of malicious prosecution?*

¶11 Judgment as a matter of law is appropriate when there is an absence of any evidence which would justify submitting an issue to the jury. *Johnson*, ¶ 13. All evidence and any legitimate inferences that might be drawn from that evidence must be considered in the light most favorable to the party opposing judgment as a matter of law. *Williams v. Union Fid. Life Ins. Co.*, 2005 MT 273, ¶ 57, 329 Mont. 158, 123 P.3d 213.

¶12 In a malicious prosecution claim, the plaintiff bears the burden of proving that "(1) a judicial proceeding was commenced against the plaintiff; (2) the defendant was responsible for instigating, prosecuting, or continuing a judicial proceeding; (3) there was a lack of probable cause for the defendant's acts; (4) the defendant was actuated by malice; (5) the judicial proceeding terminated favorably for the plaintiff; and (6) the plaintiff suffered damage." *Hughes v. Lynch*, 2007 MT 177, ¶ 12, 388 Mont. 214, 164 P.3d 913. "One of the central issues to be determined in a malicious prosecution claim is whether the party that

instigated the underlying lawsuit lacked probable cause for doing so." *Seltzer v. Morton*, 2007 MT 62, ¶ 72, 336 Mont. 225, 154 P.3d 561 (citing *Plouffe v. Mont. Dept. of Pub. Health & Human Servs.*, 2002 MT 64, ¶ 20, 309 Mont. 184, 45 P.3d 10). We have previously held that an individual has probable cause to bring civil litigation when they have a reasonable belief in the existence of facts upon which the claim is based, and reasonably believe that those facts give rise to a valid claim. *Hughes*, ¶ 16; *Plouffe,* ¶¶ 18-19.

¶13 Spoja contends that White's suit was barred by the statute of limitations under *Ereth v. Cascade Co.*, 2003 MT 328, 318 Mont. 355, 81 P.3d 463, and therefore, that Tipp should have known that no valid claim existed. But attorneys are not required to predict and exhaust every possible counter-argument to a complaint before deciding to file. An examination of probable cause must consider the facts known to the suing party at the time the lawsuit was filed. *Seltzer*, ¶ 72. The issue is whether, at the time he filed the complaint, Tipp had a reasonable belief in facts that would cause a reasonable person to file the suit. The applicable statute of limitations was disputed by both parties and never ruled on by the District Court. In correspondence between the parties, Tipp argued that the statute had not started running until White suffered actual damages from his prolonged incarceration, while Spoja contended the statute started running when White discovered the error, citing to *Ereth*. Tipp disputed the application of *Ereth* to the White suit, and maintained his theory that the case was still timely because of the date of damages. The correspondence between Tipp and Spoja's attorney demonstrates that Tipp had a reasonable legal argument for the timeliness of White's case. Spoja presented no evidence that Tipp was unreasonable in disputing the applicability of *Ereth*, or that a reasonable attorney would not have filed the suit. In light of

5

the undisputed evidence here, Tipp reasonably believed that White's incarceration gave rise to the suit.

¶14     Spoja also contends that since White's sentence was actually correct, Tipp's probable cause is factually disputable. When Tipp filed the lawsuit, however, the facts known to both parties led them to reasonably believe that a valid claim existed.  Tipp relied on the clerk's minutes to believe that a concurrent sentence should have been served, as did the deputy county attorney who moved to amend White's sentence, and the judge who found the evidence sufficient to grant the motion.  Although Tipp could have acted more diligently in obtaining the transcripts, Spoja made no argument and presented no evidence that such an omission was unreasonable or imprudent.  In fact, even Spoja initially believed he was liable for an error in White's sentence, testifying that he "was horrified that I thought I had caused somebody else harm" because he had "caused a guy to sit in prison too long" and feared a "huge civil judgment" against him.  The undisputed evidence demonstrates that, at the time the lawsuit was filed, all parties reasonably believed the facts gave rise to a valid claim.

¶15     Spoja also argues that probable cause is an objective standard, and therefore he is entitled to argue that a reasonably prudent and cautious person would have consulted the official transcripts before filing suit.  That objective "reasonably prudent and cautious" standard, however, is applied to "the facts *known* to the party initiating the legal action . . . ." *Plouffe,* ¶ 18 (emphasis added).  The facts known to Tipp caused many reasonably prudent legal minds to conclude that White had been unduly incarcerated, and Spoja alleged no facts known by Tipp that would cast his reasonableness or cautiousness into dispute.  A jury trial over whether Tipp should have investigated further would raise questions of a lawyer's duty

6

and standard of care, which is why the District Court found that Spoja's case "was related more to a negligence claim" than a malicious prosecution claim.

¶16 Finally, Spoja claims that he has demonstrated evidence of malice; Tipp said that Spoja "f'd up"; Tipp did not tell Spoja that the lawsuit was dismissed; and the lawsuit included Spoja's father without any factual basis. But if one element of malicious prosecution is not proven by prima facie evidence, judgment as a matter of law is warranted. *Plouffe*, ¶ 16 (citing *Orser v. State*, 178 Mont. 126, 135, 582 P.2d 1227, 1232 (1978)). Since Spoja has failed to raise any evidence that Tipp lacked probable cause, he has failed to demonstrate a prima facie malicious prosecution claim, so his allegations of malice are irrelevant.

¶17 *Did the District Court err when it granted summary judgment on Spoja's abuse of process claim?*

¶18 Summary judgment is appropriate when no genuine issues of material fact exist and when the moving party is entitled to judgment as a matter of law. *Feller v. First Interstate Bancsystem, Inc.*, 2013 MT 90, ¶ 16, 369 Mont. 444, 299 P.3d 338 (citing M. R. Civ. P. 56(c)(3)). We construe all facts in favor of the non-movant in determining whether an issue of material fact exists. *LaTray v. City of Havre*, 2000 MT 119, ¶ 15, 299 Mont. 449, 999 P.2d 1010. If the movant demonstrates the absence of any material issue of fact and entitlement to judgment, the non-movant must establish with substantial evidence that a genuine issue of material fact does exist or that the movant is not entitled to prevail under the law. *Semenza v. Kniss*, 2008 MT 238, ¶ 18, 344 Mont. 427, 189 P.3d 1188.

7

¶19    A plaintiff alleging abuse of process must prove a willful use of process not proper in the regular conduct of the proceeding, and that the process was used for an ulterior purpose. *Hughes*, ¶ 21.  In *Judd v. Burlington Northern & Santa Fe Ry.*, 2008 MT 181, ¶ 25, 343 Mont. 416, 186 P.3d 214, defendants had demonstrated facts proving a proper purpose for their indemnity claim.  Since the opposing party failed to allege or prove any ulterior purpose, we held that the abuse of process claim was properly dismissed. *Judd*, ¶ 26.  Here, we have concluded that Tipp was confronted with sufficient probable cause to justify initiating the suit, thereby establishing a proper purpose for the suit.  Spoja alleges that the suit's ulterior purpose is to coerce him into paying White for damages.  Payment of damages, however, is a legitimate purpose for civil litigation.  As we ruled in *Judd*, it is not an abuse of process to make a claim "for the legitimate purpose of attaining all available recourse" such as payment of damages. *Judd*, ¶ 26.  The District Court properly dismissed Spoja's abuse of process claim because no fact demonstrated Tipp acted with an improper ulterior purpose.

¶20    *Did the District Court err when it granted summary judgment on Spoja's attorney deceit claim?*

¶21    Unlike malicious prosecution and abuse of process, attorney deceit does not require that a plaintiff show an absence of probable cause or proper purpose.  Instead, plaintiffs in an attorney deceit claim must prove than an attorney acted deceitfully, with the intent to deceive an adverse party, and that the party was damaged as a result of the deceit.  Section 37-61-406, MCA; *LaFountaine v. State Farm Mut. Ins. Co.*, 215 Mont. 402, 406, 698 P.2d 410, 413 (1985).

8

¶22 When the facts are viewed in a light most favorable to Spoja, a trier of fact could find Tipp acted deceitfully and intended to do so. Tipp decided to dismiss the lawsuit without telling Spoja because he had "learned . . . to treat lawyers how they treated me, and since I wasn't required under the law to notify you, that I did not notify you." Spoja also alleged that, in an effort to exact a settlement, Tipp sued Spoja's father without any factual or legal basis. That allegation was unaddressed by the District Court's order and is never handled in Tipp's brief to this Court. The transcripts aside, a trier of fact could find that Tipp sued Spoja with the intent to deceive him into believing that he alone was responsible for White's incarceration, while simultaneously alleging under oath in a federal court that the responsibility for White's wrongful incarceration lay with the Fergus County Attorney's Office and the Department of Corrections. Accordingly, summary judgment dismissal of Spoja's attorney deceit claim was improper.

¶23 *Did the District Court err when it required Spoja to pay the costs incurred and paid by Defendant Tipp, including costs associated with Tipp's expert witness?*

¶24 Because we reverse on the attorney deceit claim an award of costs is not yet appropriate.

**CONCLUSION**

¶25 For the forgoing reasons, we reverse the entry of summary judgment against Spoja's attorney deceit claim, and the award of costs. We affirm the dismissal of Spoja's malicious prosecution claim and the award of summary judgment against his abuse of process claim.

9

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON

Justice Beth Baker, concurring.

¶26     I agree with the Court's resolution of Spoja's appeal and write separately to make one observation.

¶27     The District Court denied summary judgment on the malicious prosecution claim because it determined that whether a "reasonable person" would have obtained a transcript of the sentencing hearing before deciding to accuse Spoja of malpractice was a question for the jury. The court's contrary conclusion upon hearing the trial evidence was not in error, given that even the sentencing judge was persuaded to issue an amended judgment. But, in my view, Tipp acted irresponsibly when he simply relied on the clerk of court's minute entry in initiating his claim. The official record of the proceedings is the transcript, not the clerk's minute entry. There is nothing speculative about the idea that confirming the content of the official records is more diligent than assuming the minute entry is complete and accurate. As the District Court observed in its summary judgment ruling, "Tipp would simply have had to make the request to the court reporter and, once obtaining the transcript, review it to confirm the other information he had available."

¶28     Accusing a lawyer of professional negligence is a serious matter; although the clerk's minute entry and the judge's subsequent issuance of a corrected judgment certainly lent

10

credence to Tipp's belief, he filed a civil action for damages against Spoja in court on the ground that Spoja had committed malpractice, without checking the record to confirm his belief. While the District Court properly assessed that Spoja's allegations in this regard "related more to a negligence claim than [to] intentional acts of malice[,]" a lawyer should not sue another person for professional negligence based on matters occurring in open court without confirming the official record of the proceedings. This entire mess easily could have been avoided.

/S/ BETH BAKER

Justice Laurie McKinnon joins in the concurring Opinion of Justice Baker.

/S/ LAURIE McKINNON

11