DA 19-0594

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 199

FILED

08/11/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0594

DIANA'S GREAT IDEA, LLC, a Montana limited liability
company; ENGWIS INVESTMENT COMPANY, LTD.,
a Montana limited partnership; R.F. BUILDING COMPANY, LP,
a Montana limited partnership; ROCK CREEK RANCH I LTD.,
a Texas limited partnership; and WILD EAGLE MOUNTAIN RANCH,

        Plaintiffs, Counter-Defendants, and Appellees,

    v.

RICHARD "RICK" JARRETT, general partner of CRAZY MOUNTAIN
CATTLE CO.; and ALFRED ANDERSON,

        Defendants, Counter-Plaintiffs, and Appellants,

    and

CRAZY MOUNTAIN WIND, LLC; CRAZY MOUNTAIN LAND
AND LIVESTOCK, LLC; CRAZY MOUNTAIN CATTLE CO.;
PATTERN ENERGY GROUP, INC.; and PATTERN ENERGY
GROUP LP,

        Defendants.

APPEAL FROM:    District Court of the Sixth Judicial District,
                In and For the County of Park, Cause No. DV-2018-161
                Honorable Jon A. Oldenburg, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Monica J. Tranel, Tranel Law Firm, P.C., Missoula, Montana

        For Appellee Wild Eagle Mountain Ranch, LLC:

                Nick J. Lofing, J. Andrew Person, Garlington, Lohn & Robinson, PLLP,
                Missoula, Montana

        For Appellees Diana's Great Idea, LLC, Engwis Investment Company, Ltd., R.F.
        Building Company, LP, and Rock Creek Ranch I Ltd.:

                Elizabeth Greenwood, Inga L. Parsons, Greenwood Law, LLC, Pinedale,
                Wyoming

                Stephen E. Woodruff, Huppert, Swindlehurst & Woodruff, P.C.,
                Livingston, Montana

Submitted on Briefs:  May 13, 2020

Decided:  August 11, 2020

Filed:

<u>  Clerk  </u>

2

Justice Beth Baker delivered the Opinion of the Court.

¶1    Richard "Rick" Jarrett and Alfred Anderson appeal the order of the Sixth Judicial District Court, Park County, denying leave to amend their answer and dismissing their counterclaims with prejudice. Jarrett and Anderson also appeal the sufficiency of a cash bond that the District Court imposed earlier in the litigation pursuant to § 27-19-306(2), MCA. We conclude that the District Court correctly disallowed Jarrett and Anderson's amendments as untimely under M. R. Civ. P. 15(a)(2), but that it erred in concluding their counterclaims were compulsory under M. R. Civ. P. 13(a) and dismissing them with prejudice. We conclude further that the bond issue is moot. Accordingly, we affirm in part, reverse in part, and remand for entry of dismissal of the counterclaims without prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    Jarrett is a fifth-generation rancher from Park County, Montana. Anderson's family has ranched in Sweet Grass County, Montana, since the early 1900s. Together, Jarrett and Anderson leased property to Pattern Energy Group 2 LP and its subsidiaries ("Pattern")[1] to develop a wind farm called Crazy Mountain Wind ("CMW"). Jarrett and Anderson hoped that CMW would generate income to sustain their family ranches, pay for ranch and medical bills, and support their retirement. The record reflects that early stages of the wind farm project began as early as 2004.

---

[1] Pattern is a renewable energy company involved in developing the wind farm on Jarrett and Anderson's property. Pattern was a defendant in the District Court proceedings but is not a party to this appeal.

3

¶3    Plaintiffs Diana's Great Idea, LLC, Engwis Investment Company, LTD., R.F. Building Company, LP, and Rock Creek Ranch I, LTD. (collectively, "Neighbors") are corporations that own land in Park and Sweet Grass Counties.  Their properties include residential improvements, agricultural lands, and ranching operations.  Intervenor Wild Eagle Mountain Ranch, LLC ("WEMR") is a Montana limited liability company that owns a ranch in Park and Sweet Grass Counties.  The land owned by Neighbors and WEMR completely surrounds and abuts Jarrett's and Anderson's properties, including the projected wind farm, with the exception of one state school section.

¶4    As planned, CMW would consist of 22 wind turbines configured into four rows.  According to testimony and renderings of the project, each turbine would have a maximum height of approximately 492 feet and be visible for miles, including from Neighbors' properties and from one Neighbor's residence.

¶5    On September 28, 2018, Neighbors filed a complaint in the Sixth Judicial District Court claiming, among other things, that construction of the wind farm constituted a private, public, and anticipatory nuisance and seeking both damages and injunctive relief.[2]  Jarrett and Anderson answered the complaint on November 14, 2018, but did not interpose any counterclaims.  WEMR filed a motion to intervene in the lawsuit on December 5, which the court granted on February 5, 2019.

---

[2] There appears to have been two prior configurations of the wind farm project, both of which failed after Neighbors and other adjoining landowners challenged those projects.

4

¶6 The court held a three-day hearing on Neighbors' motion for a preliminary injunction from February 19 to 21, 2019. On February 20, the court conducted a site visit to view the area of the proposed wind farm and the parties' properties. Jarrett and Anderson claim that on February 21, the final day of the hearing, David Chesnoff, principal of Plaintiff Diana's Great Idea, LLC, was overheard during a recess admitting that Neighbors instigated the litigation "to delay this long enough—4 or 5 months—to kill it once and for all." Upon reconvening, counsel for Jarrett and Anderson questioned Chesnoff under oath about his statements.[3]

¶7 On March 19, the District Court issued its findings of fact, conclusions of law, and order, granting Neighbors' request for a preliminary injunction based on the testimony and evidence presented at the hearing. The court further ordered Neighbors to post a cash bond pursuant to § 27-19-306(2), MCA. Pattern requested a bond of $181,000,000; Jarrett and Anderson requested a separate bond of $5,000,000. The court concluded that the projected wind farm was an "industrial operation"; that there was no evidence of any loss of wages, salaries, or benefits to Jarrett and Anderson; and that a single $50,000 cash bond proposed by Neighbors was appropriate for all three of the defendants.[4]

---

[3] There is no transcript of the preliminary injunction hearing. As the District Court noted in its Findings of Fact, Conclusions of Law, Order on Preliminary Injunction, "No transcript was available to the parties or the Court. Ordinarily the Court would grant time for the production of a transcript prior to the submission of the Findings and Conclusions, however, the Court was made aware of the limited time-frame that Defendants felt was necessary for a decision." Jarrett and Anderson did not have a transcript prepared for this appeal. The Court has referred in part to the minute entries for background regarding the three-day hearing.

[4] On April 15, Jarrett and Anderson filed their "Objection to Sufficiency of Surety as to Jarrett and Anderson's Private Property and Demand for Immediate Showing of Adequacy as Required by § 27-19-306(3)[, MCA]." After further briefing and a hearing on the matter, the court issued an

¶8     The District Court issued a scheduling order on April 24, requiring in part that "any request for amendment to the pleadings, joinder of other parties, or counterclaims must be filed by May 9, 2019." Jarrett and Anderson filed an Amended Answer and Counterclaim and Request for Jury Trial on May 6, asserting ten affirmative defenses and alleging the following counterclaims: Count I-Tortious Interference With A Contract; Count II-Abuse of Process; Count III-Conversion; Count IV-Slander of Title; Count V-Vexatious Litigation; Count VI-a claim for Prejudgment Interest; and Count VII-a notice seeking Punitive Damages. On May 17, Neighbors jointly moved to dismiss the counterclaims as untimely, arguing in part that they were compulsory and should have been included in Jarrett and Anderson's original answer. On June 3, Jarrett and Anderson moved to file a Second Amended Answer and Counterclaim, replacing Count III with a claim for constructive trust and unjust enrichment. On June 28, they moved to file a Third Amended Answer and Counterclaim adding WEMR as a counterclaim defendant.

¶9     On July 1, Pattern moved the District Court to dismiss it without prejudice from the lawsuit. Pattern explained that the court's March 19 preliminary injunction rendered it impossible to obtain the necessary financing to complete the wind project and to satisfy certain contractual obligations, and thus Pattern was compelled to abandon development of the wind farm.

¶10     On September 13, the District Court issued its Order on Pending Motions, concluding that Jarrett and Anderson's counterclaims were compulsory under

order rejecting Jarrett and Anderson's arguments and upholding its earlier bond determination and supporting rationale.

6

M. R. Civ. P. 13(a); that they were required to file their counterclaims with their initial answer on November 9, 2018; and that their late-added counterclaims were untimely. The court further concluded that M. R. Civ. P. 15(a)(2) barred Jarrett and Anderson's amendments, reasoning that they had failed to obtain the opposing parties' consent or leave of court to amend their pleadings as required under the rule and that allowing the amendments would prejudice Neighbors and WEMR. The court dismissed Jarrett and Anderson's counterclaims with prejudice and denied their motions to file the second and third amendments.[5] Jarrett and Anderson appeal the District Court's denial of their motions to amend, its determination that their counterclaims were compulsory, and the sufficiency of the previously court-ordered $50,000 bond.

**STANDARD OF REVIEW**

¶11 A district court has discretion to grant or deny a motion to amend a pleading. *Ally Fin., Inc. v. Stevenson*, 2018 MT 278, ¶ 10, 393 Mont. 332, 430 P.3d 522. We therefore review a district court's denial of a motion to amend a pleading for abuse of discretion. *Ally Fin., Inc.*, ¶ 10 (citing *Farmers Coop. Ass'n v. Amsden, LLC*, 2007 MT 286, ¶ 12, 339 Mont. 445, 171 P.3d 690); *Rolan v. New W. Health Servs.*, 2017 MT 270, ¶ 10, 389 Mont. 228, 405 P.3d 65 (citing *Lindey's v. Prof'l Consultants*, 244 Mont. 238, 242, 797 P.2d 920, 923 (1990)).

---

[5] The court's order also dismissed Neighbors' and WEMR's complaints without prejudice; dismissed Jarrett and Anderson's motion for summary judgment as moot; granted Plaintiff Rock Creek Ranch I, LTD.'s Motion for a Protective Order; and ordered all parties to pay their respective attorney's fees and costs. These rulings are not at issue on appeal.

¶12 We review a district court's conclusions of law, including a decision to dismiss a pleading on the basis of M. R. Civ. P. 13(a), de novo for correctness. *Zimmerman v. Connor*, 1998 MT 131, ¶ 7, 289 Mont. 148, 958 P.2d 1195.

**DISCUSSION**

¶13 *1. Did the District Court abuse its discretion in denying Jarrett and Anderson leave to amend their Answer and Counterclaim under M. R. Civ. P. 15(a)(2)?*

¶14 The District Court disallowed Jarrett and Anderson's amendments to their answer, concluding first that they had failed to obtain Neighbors' written consent or the court's leave as required by M. R. Civ. P. 15(a)(2). The District Court relied on *Edgewater Townhouse Homeowner's Ass'n v. Holtman*, 256 Mont. 182, 187, 845 P.2d 1224, 1227 (1993), in which we affirmed dismissal of an untimely compulsory counterclaim for failure to meet the "leave of court" requirement of M. R. Civ. P. 13(f).[6] Citing *Peeler v. Rocky Mt. Log Homes Can., Inc.*, 2018 MT 297, 393 Mont. 396, 431 P.3d 911, Jarrett and Anderson assert that "Rule 15(a)'s requirement for consent of other parties or leave of court only applies '[A]fter expiration of specified deadlines for filing an amended pleading as a matter of course [. . .]'" and that no such deadlines had expired. Jarrett and Anderson misread *Peeler*. It referenced Rule 15(a)(1), which in relevant part allows one amendment of a pleading as a matter of course within "21 days after serving it[.]" Jarrett and Anderson filed their original answer on November 14, 2018. They filed their amended answer on May 6, 2019, well after

---

[6] This subsection of the Rule has since been abrogated.

8

Rule 15(a)(1)'s 21-day deadline had passed. "After expiration of specified deadlines for filing an amended pleading as a matter of course, a party may amend a [pleading] only upon written consent of the opponent or prior leave of court." *Peeler*, ¶ 28 (citing M. R. Civ. P. 15(a)(2)).

¶15    The record reflects—and Jarrett and Anderson do not dispute—that they did not obtain consent to amend their answer from either Neighbors or WEMR. Nor did they obtain leave of court. We reject Jarrett and Anderson's contention that their amendments were timely under the District Court's scheduling order, which required "any request for amendment to the pleadings . . . , [including] counterclaims, must be filed by May 9, 2019." They point out that they filed their amendments in advance of this deadline on May 6. Jarrett and Anderson argue that the scheduling order should supersede the rules of civil procedure. In rejecting their argument, the District Court explained, "While this provision [in the order] does encompass both compulsory and permissive counterclaims, it does not exempt any party from following Montana's Rules of Civil Procedure when preparing and filing those." They rely on our decision in *Brookins v. Mote*, 2012 MT 283, ¶ 28, 367 Mont. 193, 292 P.3d 347, holding that the "good cause" standard in the more specific M. R. Civ. P. 16(b)(4)—rather than the "excusable neglect" standard set forth in the more general M. R. Civ. P. 6(b)—governed the extension of deadlines in a scheduling order. Their reliance on *Brookins* is misplaced. *Brookins* addressed the "overlapping nature" of two discrete rules of civil procedure as applied to a scheduling order, not the priority between the District Court's scheduling order and a governing rule of civil procedure.

9

*Brookins*, ¶ 28.  Finally, as WEMR points out, Jarrett and Anderson never requested leave to file their amendments, as the order expressly required.

¶16    When presented with their subsequent motions to amend, the court denied leave, concluding that allowing Jarrett and Anderson to amend their answer would unduly prejudice both Neighbors and WEMR.  Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires."  We interpret the rule liberally so that allowance of amendments is the general rule and denial is the exception.  *Ally Fin., Inc.*, ¶13 (quoting *Allison v. Town of Clyde Park*, 2000 MT 267, ¶ 20, 302 Mont. 55, 11 P.3d 544).  This does not mean, however, that a district court automatically must grant a motion to amend. *Ally Fin., Inc.*, ¶ 13; *Rolan*, ¶ 15 (quoting *Kershaw v. Mont. Dept. of Transp.*, 2011 MT 170, ¶ 25, 361 Mont. 215, 257 P.3d 358).  A district court properly may deny such a motion for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by allowance of the amendment, futility of the amendment, etc." *Ally Fin., Inc.*, ¶ 13 (quoting *Farmers Coop. Ass'n*, ¶ 12).    *See also Bitterroot Int'l Sys. v. Western Star Trucks, Inc.*, 2007 MT 48, ¶ 50, 336 Mont. 145, 153 P.3d 627 (quoting *Lindey's*, 244 Mont. at 242, 797 P.2d at 923).

¶17    Jarrett and Anderson maintain that the District Court should have allowed their counterclaims under Rule 15(a)(2)'s liberal standard.  Neighbors and WEMR contend—as the District Court determined—that allowing Jarrett and Anderson to amend their pleadings would result in undue prejudice.

¶18     To determine whether an amendment would cause undue prejudice, a court should balance the prejudice suffered by the opposing party against the sufficiency of the moving party's reason for delay. *Ally Fin., Inc.*, ¶ 14; *Rolan*, ¶ 16; *Farmers Coop. Ass'n*, ¶ 14. We have outlined the following factors in considering undue prejudice: the length of delay between the original pleading and the motion for amendment; the stage of the proceedings; whether the opposing party has sufficient notice of the amended claims in anticipation of trial; whether the opposing party already filed for summary judgment; and whether the amendment articulates a new legal theory. *Ally Fin., Inc.*, ¶ 15 (citations omitted). "When an amended pleading presents a new legal theory, the test for undue prejudice is whether the opposing party expended 'substantial effort and expense that would be wasted if the new theory was allowed.'" *Ally Fin., Inc.*, ¶ 15 (quoting *Farmers Coop. Ass'n*, ¶ 14). Prolonged delay and the stage of proceeding alone do not warrant denial; the key is whether the party's efforts and expenses are wasted in allowing the new legal theory to proceed. *Ally Fin., Inc.*, ¶ 15 (citations omitted).

¶19     Under the applicable law, we conclude that the District Court did not abuse its discretion in denying Jarrett and Anderson's proposed pleading amendments. The District Court conducted the appropriate analysis, fully considering the factors we articulated in *Ally Fin., Inc.* The court observed that six months had elapsed between Jarrett and Anderson's original answer and their motion to amend, noting that "[i]n that span, significant discovery has been performed at what the record suggests has been great cost to all parties." The District Court also noted that trial, only two months away, had been "set on a fast-track at [Jarrett and Anderson's] request and over the objections of all other

11

parties[.]" The court concluded that allowing their proposed amendments likely would postpone trial, necessitate new discovery, burden all parties with additional costs, and delay resolution of the litigation.

¶20 Jarrett and Anderson sought to add substantial new counterclaims to the case. The amendments presented seven additional counterclaims, raising new legal theories. In *Farmers Coop. Ass'n*, ¶¶ 8, 22, we affirmed denial of the plaintiff's motion to amend its complaint more than four months after the deadline set by the scheduling order. We agreed with the district court that allowing the amendment would unduly prejudice the defendant because the plaintiff had never indicated it would pursue recovery for the new legal theories it sought to add. *Farmers Coop. Ass'n*, ¶¶ 14-15, 22.

¶21 Similarly here, Jarrett and Anderson did not indicate until more than six months after filing their answer that they would pursue recovery, including punitive damages, for multiple tort claims. The District Court rightly observed that defending against these counterclaims would impose additional effort and expense.

¶22 Finally, Neighbors and WEMR emphasize that Jarrett and Anderson did not offer sufficient justification for the delay to overcome the resulting prejudice, as our case law requires. Jarrett and Anderson assert that any delay caused by their amendments would harm them more than it would harm Neighbors or WEMR. This unsupported contention does not answer the inquiry at hand—whether Jarrett and Anderson sufficiently justified the harm to Neighbors and WEMR caused by the delay in filing their amendments. The District Court acted within its discretion when it considered the expedited trial date it set

at Jarrett and Anderson's request and the considerable discovery that already had been completed. We decline to disturb its order denying Jarrett and Anderson's amendments.

¶23 *2. Did the District Court err in concluding that Jarrett and Anderson's counterclaims were compulsory under M. R. Civ. P. 13(a) and dismissing them with prejudice?*

¶24 Jarrett and Anderson assert that, regardless of the court's Rule 15 determination, their counterclaims were not compulsory under Rule 13(a) and that the District Court's dismissal therefore should have been without prejudice. They argue that their counterclaims did not mature until February 21, when Chesnoff allegedly admitted during a court recess that Neighbors brought this lawsuit for the improper purpose of delaying the wind farm long enough to simply defeat it. Jarrett and Anderson thus contend that the District Court should have applied M. R. Civ. P. 13(e), which permits late filing of "after-acquired" counterclaims.

¶25 A compulsory counterclaim is defined as "any claim that—at the time of its service—the pleader has against an opposing party if the claim [] arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[.]" M. R. Civ. P. 13(a)(1)(A). The purpose of this rule is to avoid a multiplicity of suits by requiring the parties to bring logically related claims into a single litigation. *See Peters v. State*, 285 Mont. 345, 349, 948 P.2d 250, 253 (1997). To determine whether a counterclaim is compulsory under Rule 13(a), we analyze what comprised the "transaction or occurrence" and whether the counterclaims arose out of that transaction or occurrence. *See Peters*, 285 Mont. at 349, 948 P.2d at 253. In *First Bank v.*

13

*Fourth Judicial District Court,* we adopted the United States Supreme Court's "logical relationship test" in interpreting "transaction":

> "Transaction" is a word of flexible meaning. It may comprehend a series of many occurrence[s], depending not so much upon the immediateness of their connection, as upon their logical relationship . . . . It is the one circumstance without which neither party would have found it necessary to seek relief. Essential facts alleged by appellant enter into and constitute in part the cause of action set forth in the counterclaim. That they are not precisely identical, or that the counterclaim embraces additional allegations . . . does not matter.

*First Bank,* 226 Mont. 515, 521, 737 P.2d 1132, 1136 (1987) (quoting *Moore v. N.Y. Cotton Exch.,* 270 U.S. 593, 610, 46 S. Ct. 367, 371 (1926)).

¶26 Applying the logical relationship test, we disagree with the District Court's conclusion that Neighbors' claims and Jarrett and Anderson's counterclaims arose from a singular transaction. Neighbors' claims arose from the development of the projected wind farm. Jarrett and Anderson's counterclaims arose from Neighbors' alleged misuse and abuse of the litigation process. Jarrett and Anderson claim that Neighbors acted solely for the purpose of interfering and delaying the construction of the wind farm until it lost financing and was no longer viable.

¶27 Jarrett and Anderson cite *Seltzer v. Morton,* 2007 MT 62, 336 Mont. 225, 154 P.3d 561, in arguing that their counterclaims for abuse of process and related claims are not compulsory. *Seltzer* involved claims for abuse of process and malicious prosecution based on meritless litigation pursued by Morton and his attorneys that was designed to coerce Seltzer into changing his opinion on a piece of art that Morton had purchased. *Seltzer,* ¶¶ 1, 13, 44, 49. Seltzer did not assert any counterclaims when he answered Morton's complaint. But after the court dismissed Morton's claim, Seltzer filed a separate

14

action alleging abuse of process. *Seltzer*, ¶ 50. Seltzer prevailed in the district court, and we affirmed. *Seltzer*, ¶¶ 50, 200.

¶28 Here, the District Court held "that when the original Answer was filed—November 15, 2018[—Jarrett and Anderson] were aware of [Neighbors'] objectives in filing the complaint" and "thus were required to plead them at the time." But this conclusion is inconsistent with *Seltzer*. There too, Seltzer was aware of the ulterior motive at the time Morton filed his litigation. That Seltzer did not assert any counterclaims when he answered Morton's complaint was not fatal to those claims; instead, he raised them in a separate action. *See Seltzer*, ¶ 50. This case is no different. Like Seltzer, Jarrett and Anderson arguably were aware of Neighbors' motives when they filed their answer. As the court observed, the counterclaims explicitly refer to the protracted nature of the parties' legal disputes to support the contention that Neighbors used litigation as a tool to delay and prevent construction of the wind farm. But this does not as a matter of law foreclose Jarrett and Anderson's opportunity to vindicate their claims in an ensuing lawsuit based on Neighbors' alleged abuse of the legal process in their separate litigation. On their face, Neighbors' complaint alleged a viable legal claim for nuisance and injunctive relief. Jarrett and Anderson were entitled to assume that the complaint was "not being presented for any improper purpose[.]" M. R. Civ. P. 11(b)(1).

¶29 Our conclusion finds support in other cases in which a plaintiff brought claims based on alleged misuse or abuse of the legal process that were filed after the legal proceedings that formed the basis for the claims had concluded. *See, e.g., Salminen v. Morrison & Frampton, PLLP*, 2014 MT 323, ¶¶ 4, 15, 377 Mont. 244, 339 P.3d 602

15

(abuse of process claim based on defendant law firm's execution of judgment issued in prior lawsuit); *Spoja v. White*, 2014 MT 9, ¶¶ 5-7, 373 Mont. 269, 317 P.3d 153 (abuse of process action based on two prior legal proceedings); *Seipel v. Olympic Coast Invs.*, 2008 MT 237, ¶¶ 5-6, 344 Mont. 415, 188 P.3d 1027 (state court action for abuse of process and malicious prosecution based on prior federal court action); *Judd v. Burlington N. & Santa Fe Ry. Co.*, 2008 MT 181, ¶¶ 10, 11, 343 Mont. 416, 186 P.3d 214 (state court abuse of process claim based on prior federal indemnification action); *Hughes v. Lynch*, 2007 MT 177, ¶¶ 3-5, 338 Mont. 214, 164 P.3d 913 (action for abuse of process based on prior Montana Human Rights Commission complaint); *Lurie v. Blackwell*, 285 Mont. 404, 406-07, 948 P.2d 1161, 1162 (1997) (state court abuse of process claim based on prior federal bankruptcy action); *Leasing, Inc. v. Discovery Ski Corp.*, 235 Mont. 133, 765 P.2d 176 (1988) (abuse of process claim based on prior justice court action); *Brault v. Smith*, 209 Mont. 21, 23, 679 P.2d 236, 237 (1984) (action for libel, slander, contract losses and abuse of process based on prior action). These cases reflect the independent basis for an abuse of process claim. Because of such a claim's separate nature, the parties do not share "one circumstance without which neither party would have found it necessary to seek relief." *First Bank*, 226 Mont. at 521, 737 P.2d at 1136.

¶30 Without commenting on the validity of any such claims, we conclude that Jarrett and Anderson's counterclaims were not compulsory under Rule 13(a), and they should be

16

allowed to assert them in future litigation, should they so choose. The District Court accordingly erred in dismissing them with prejudice.[7]

¶31 *3. Whether Jarrett and Anderson's challenge to the sufficiency of the $50,000 bond is moot?*

¶32 Jarrett and Anderson also appeal the District Court's bond determination at the preliminary injunction hearing. They argue that the court misinterpreted § 27-19-306, MCA, when it determined that Jarrett, Anderson, and Pattern comprised an industrial operation under § 27-19-306(2), MCA, and accordingly imposed a single $50,000 bond for all three of them. Jarrett and Anderson contend that they are not an industrial operation and that the court should have awarded separate bonds for them and for Pattern. Neighbors and WEMR counter that the District Court's dismissal of their lawsuit has rendered moot any objection to the sufficiency of the bond. They alternatively assert that the District Court correctly interpreted and applied the bond statute in setting the $50,000 bond.

¶33 An issue becomes moot when the circumstances present at the outset of the action are no longer "live" or have ceased to exist, or if the court is unable to grant effective relief or to restore the parties to their original positions due to an intervening event or change in circumstances. *Wyo-Ben, Inc. v. Bixby*, 2014 MT 334, ¶ 22, 377 Mont. 318, 339 P.3d 1255;

---

[7] The District Court declined to allow Jarrett and Anderson's counterclaims under Rule 13(e). That Rule provides that "[t]he court *may* permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading." M. R. Civ. P. 13(e) (emphasis added). Because we have concluded that the court properly denied leave to amend and that Jarrett and Anderson may raise their claims in a separate proceeding, we find it unnecessary to reach this argument.

*Plan Helena, Inc. v. Helena Reg'l Airport Auth. Bd.*, 2010 MT 26, ¶ 10, 355 Mont. 142, 226 P.3d 567. Moot issues are non-justiciable insofar as an actual case or controversy does not exist. *Wyo-Ben, Inc.*, ¶ 22; *Plan Helena, Inc.*, ¶¶ 8-11.

¶34 The purpose of the bond was to indemnify Jarrett, Anderson, and Pattern for potential costs and damages they may have suffered as a result of the preliminary injunction or if later found to have been wrongfully enjoined. Section 27-19-306, MCA. Because it could no longer obtain the requisite financing, Pattern terminated the wind farm project and was dismissed from the lawsuit. After ruling in favor of Neighbors and WEMR below, the District Court dissolved the injunction against Jarrett and Anderson and ordered release of the cash bond on Neighbors' motion and without objection by Jarrett and Anderson. Because the wind farm project and the preliminary injunction—the very reasons to impose the bond in the first place—have ceased to exist, we conclude that Jarrett and Anderson's challenge to the sufficiency of the bond is moot.

## CONCLUSION

¶35 We affirm the District Court's denial of Jarrett and Anderson's proposed amendments to their pleadings under Rule 15(a). Because Jarrett and Anderson's counterclaims were not compulsory, we reverse its order dismissing the counterclaims with prejudice and remand for dismissal without prejudice.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

18