No. 85-032

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

FARMERS STATE BANK OF VICTOR, MONTANA,
a Montana Banking corp.,

        Plaintiff and Respondent,

  -vs-

IMPERIAL CATTLE COMPANY, a Montana
Corporation, et al.,

        Defendant and Appellant.

_____

APPEAL FROM:  District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

         James A. Manley, St. Ignatius, Montana

     For Respondent:

         Datsopoulos, MacDonald & Lind; Edward Murphy,
Missoula, Montana

_____

Submitted on Briefs: June 13, 1985

Decided: September 18, 1985

Filed: SEP 18 1985

_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Coiurt.

Imperial Cattle Company (ICC), Kenneth N. Lillethun and Norman I. Rock, appellants, appeal a judgment of the Fourth Judicial District, Lake County, entered in favor of James Edmiston, respondent, on August 8, 1984. The District Court concluded that appellants failed to establish their claims of constructive fraud, breach of fiduciary duty and conversion against respondent. We affirm.

Respondent and Lillethun first had contact with each other in 1972 in connection with the sale of silage by respondent to Lillethun. Late that year or early in 1973 they started to discuss organizing a large-scale dairy operation. During the course of these conversations, Lillethun brought Rock into the discussions. Lillethun and Rock both were experienced in the dairy business. Respondent, while he knew little about the dairy business, was an experienced businessman and banker, and owned a ranch and feed lot near Columbia Falls, Montana.

Respondent formed ICC in 1967 but did not conduct any business relevant to this action through the corporation until late February or early March, 1973. At that time, he, Lillethun and Rock contributed assets to the corporation in an attempt to construct a dairy operation on his ranch. Respondent contributed $50,000 in cash. Lillethun and Rock contributed their milk bases valued at about $48,000 and $65,000, respectively. Milk base is the amount of grade one milk, expressed as pounds per day, an individual is permitted to sell and is essential to a profitable dairy ranch. Lillethun and Rock agreed to manage the dairy operation and were to receive a salary until the business began to generate a profit. Lillethun and respondent were to seek the financing required to set up the operation at the ranch. All

2

parties agreed that if the project could not be put together by September 15, 1973, they would abandon it and each would have their contributions returned to them.

In March 1973, Lillethun acquired cattle for ICC through a leasing arrangement with the Dolson Company, a company that had bought many of his cattle. Rock sold many of his cattle to Dolson Company and then leased back the same cattle for ICC. A third person, Searles, also sold his cattle to Dolson Company and ICC leased the same herd. The cattle operation ran at three locations after ICC leased the cattle, Lillethun's dairy in Lake County, Rock's dairy in Ravalli County, and Searles' dairy, which was being leased in Ravalli County. Lillethun, Rock and Searles received rent from ICC for the use of the dairies.

Also in March 1973, Lillethun and respondent refinanced some machinery through Western Farm Bureau Insurance. They represented the machinery as belonging to ICC and took out a loan for $64,500 in the company's name. Respondent personally guaranteed the loan. The parties used $28,955.55 of the loan proceeds to repay PCA to avoid a foreclosure on respondent's machinery. They used $13,567.62 to pay off an encumbrance on Lillethun's machinery. $9,000 went to Lillethun personally. The remainder stayed in the corporation. Both Lillethun and respondent signed an appraisal stating the total cash value of the equipment was $101,350. Respondent's equipment was worth about $67,850 and Lillethun's was worth about $33,500. During the summer and fall of 1973 certain items of equipment were traded in and replaced with other items which were financed through Western Farm Bureau Insurance. The equipment, except for Lillethun's items, was located on respondent's land.

Lillethun and respondent first contacted several banks and lenders in western Montana in an effort to arrange

financing and equipment for the dairy. Later, they made numerous trips out of state to New York, Chicago, Seattle and other places to find financial backing for the dairy. All such contacts, made from March to mid August 1973, proved fruitless. Respondent paid for most of the expenses for this travel out of his own pocket.

During this search for financing, ICC produced milk at the three separate locations. Respondent provided silage valued at $59,584.19 and $36,000-$38,000 in cash. He withdrew between $54,990.34 and $57,466.34 as payment for the silage during this period.

Around August 1973, respondent concluded that financing for the project was unlikely and that the search should be abandoned. Consequently he turned all ICC records over to Lillethun and Rock. In addition, since checks written on the company account at Conrad National Bank were being returned "NSF," the bank wanted the account closed. Respondent then withdrew the remaining funds, including the payment for silage mentioned above. All further banking took place at Farmer's State Bank of Victor.

After taking over the books, Lillethun and Rock made all the decisions for ICC. They began borrowing money from Farmer's State Bank to meet operating expenses. On March 1, 1974, Lillethun and Rock, in their capacity as vice-presidents for ICC, executed a security agreement and note with that bank for about $35,800 and used the money to pay off earlier loans. The equipment that had been refinanced through Western Farm Bureau Insurance was used to secure the loan. Lillethun and Rock also personally guaranteed the note. The security agreement had a provision stating that the sale of the collateral constituted default.

On March 4, 1974, respondent sold all the equipment on the ranch, along with the ranch, to Harry and Helen Johnson.

4

He paid Western Farm Bureau Insurance the balance of their note. None of the remaining proceeds were transferred to ICC or Farmer's State Bank. Farmer's State Bank brought an action against ICC, Lillethun, Rock and Johnsons to collect on its note , and asserted a claim against the respondent and his wife for conversion of property. The Bank moved for and was granted summary judgment against all the defendants. On an appeal to this Court by respondent, we held that respondent allowed the Bank to rely on his representations that the equipment belonged to ICC and was estopped from denying he had converted the property. Farmer's State Bank of Victor v. Johnson (1980), 188 Mont. 55, 610 P.2d 1172. Although the judgment was against all the defendants, respondent eventually paid the note and interest exceeding $62,000 in total.

Lillethun claimed that respondent stopped payment on a check for $27,500 which represented a five percent commission due him on the cattle brought into ICC through the sale-lease back arrangement with Dolson Company. The check's date, November 1, 1973, and the amount were typewritten, while Lillethun's name and respondent's signature were handwritten. Respondent's checkbook register showed the check issued to Lillethun on July 16, 1973 but did not indicate an amount. Lillethun did not present the checks for payment until late February 1974 when he knew a large sum of money was in respondent's account. Respondent claimed he signed the check in blank to cover some travel expenses for Lillethun and that Lillethun wrongfully inserted the amount. He also claimed that a commission was initially discussed but the parties never agreed on it. The District Court found that a five percent commission was consistent with the nature of the parties' agreement but that it was an ICC obligation rather than respondent's personal debt.

5

The dairy operation failed in the fall of 1974. The cattle were turned over to the Dolson Company. Respondent paid the remaining deficiency by transferring property worth $45,000 to Dolson Company. The District Court found that Lillethun and Rock had their milk bases returned to them in accordance with the earlier agreement of the parties. At that time, they were not in a position to utilize their milk bases and consequently lost them because of non-production for a period established by state regulation.

This case commenced on April 18, 1975 when Farmer's State Bank of Victor filed an action against K.N. Lillethun, Joe Rock and ICC to collect on several promissory notes, and against James and Phillis Edmiston for conversion of the collateral securing one of the notes, explained above. The complaint was later amended to name Harry and Helen Johnson as defendants since they purchased the collateral from the Edmistons. Lillethun, Rock and ICC filed a cross-claim against the Edmistons for conversion and for indemnification for any judgment entered against them. The Johnsons also filed a cross-claim against the Edmistons for indemnification. On November 4, 1977, Lillethun, Rock and ICC filed an amended cross-complaint against the Edmistons for conversion of the collateral and conversion of money and Lillethun filed against respondent for stopping payment on the $27,500 check. They also cross-complained against the Johnsons.

On January 4, 1984, Lillethun, Rock and ICC sought leave to file a second amended cross-complaint. This complaint alleged breach of contract, fraud committed with respect to that contract, and conspiracy to commit fraud. The Johnsons' motion to dismiss the claims against them was granted. This Court allowed the filing of the second amended cross-compaint against the Edmistons. Edmistons' answer

6

raised the statute of limitations as a defense to all claims except conversion of equipment which was alleged in the first cross-complaint in 1975 and for stopping payment on the check which was alleged in the first amended cross-complaint filed in 1977.

Following plaintiff's case-in-chief, the District Court dismissed the case against Phillis Edmiston. That order is not being appealed. After the trial on April 11-13, 1984, the court entered judgment in favor of respondent on all claims.

Appellants raise the following issues on appeal:

(1) Did the District Court err in concluding Lillethun and Rock had not established claims for constructive fraud and breach of fiduciary duty against respondent?

(2) Did the District Court err in concluding Lillethun and Rock had not established a claim for conversion against respondent?

(3) Did the District Court err in not entering findings or conclusions on ICC's claims against respondent?

(4) Was there substantial credible evidence to support the District Court's findings?

Respondent raises an additional issue:

(5) Are any or all of appellants' claims barred by statutes of limitations?

The issues raised by appellants all concern whether the District Court's findings and judgment were proper.

> [They] are presumed correct and will not be overturned unless the [appellants meet] the burden of proving with a preponderance of evidence that they are wrong. Merely showing the evidence establishes reasonable grounds for reaching a different conclusion is insufficient to reverse the District Court findings. (Citation omitted.)

Frank L. Pirtz Constr., Inc. v. Hardin Town Pump, Inc. (Mont. 1984), 692 P.2d 460, 462, 41 St.Rep. 2366, 2368.

7

Appellants contend, as part of their claim for constructive fraud, that respondent breached his fiduciary duty by failing to inform them of his true intention to sell the ranch, causing their greatest damages. Constructive fraud is "any breach of duty which . . . gains an advantage to the person in fault . . . by misleading another to his prejudice." §28-2-406, MCA. The parties presented conflicting evidence both on whether Lillethun and Rock knew respondent's ranch was for sale and on respondent's intentions. Appellants do not seriously dispute the findings that respondent made his agreed financial contribution, that he paid other expenses in an effort to find financing and that he travelled to numerous places to find financing. The District Court also determined that respondent used his best efforts to make the dairy operation a success and concluded that he "exercised diligent good faith efforts" on behalf of ICC. We find there was substantial evidence for the District Court to conclude that respondent did not breach any duty and that, as a result, appellants failed to establish a claim for constructive fraud.

Appellants rest their second claim, in part, on this Court's prior holding in Farmer's State Bank, 188 Mont. 55, 610 P.2d 1172. The respondent was estopped from asserting ownership of the equipment because he allowed the Bank's loan officers to rely on documents showing ICC owned it. Here, appellants rather than the Bank are asserting a claim for conversion. Our holding that respondent led the Bank to act on a particular belief was based on estoppel and does not establish that respondent transferred ownership of the equipment or led appellants to act on that belief. Thus they must independently establish their claim rather than relying on the Bank's proof.

8

Conversion requires ownership of the property, a right of possession, and unauthorized dominion over the property by another resulting in damages. Gebhardt v. D. A. Davidson & Co. (Mont. 1983), 661 P.2d 855, 858, 40 St.Rep. 521, 524. Since respondent undisputedly owned the equipment prior to the activation of ICC, appellants must show respondent transferred ownership to prove conversion. Possession of personal property creates a rebuttable presumption of ownership. Park v. Grady (1922), 62 Mont. 246, 204 P. 382. Respondent retained possession of the equipment. Nothing in the record indicates the equipment was ever used at the locations of the dairy operation. No writing exists between the parties indicating respondent transferred any title to ICC even though the parties' contributions of cash and milk bases were acknowledged in writing by a promissory note and letters, respectively. Respondent and Lillethun were both involved in the decision to pay off the earlier loans on the equipment and so must have discussed the arrangements. The District Court's finding that Lillethun and respondent both knew respondent did not intend to transfer ownership of the equipment, while disputed, was supported by evidence presented at trial. Without the transfer of ownership, no claim for conversion exists. We hold that the District Court properly concluded appellants did not establish a claim for conversion.

In the third issue, appellants argue that ICC proved a claim of conversion against respondent in the same manner Lillethun and Rock established their claims. Since we are holding respondent never transferred ownership of the equipment, negating the first element, ICC's claim fails as well.

Appellants list thirteen specific District Court findings in the fourth issue and argue they were either

unsupported or not substantially supported by the evidence. Certain monetary amounts vary slightly from the proof offered at trial. However the variation in amounts has no affect on the outcome of the issues. As such it is harmless error not requiring a reversal of the judgment. Montana Livestock and Loan Co. v. Stewart (1920), 58 Mont. 221, 190 P. 985.

The remaining findings, although made on conflicting evidence, have adequate support in the record. We will not reverse a district court's findings of fact when supported by the evidence presented at trial. Frank L. Pirtz Constr., Inc., 692 P.2d at 462.

Respondents raise the statute of limitations as an additional defense. Our holdings on the first four issues make this issue moot.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

10