FILED

December 2 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0179

DA 14-0179

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 323

DON F. SALMINEN and SUSAN P. SALMINEN,

      Plaintiffs and Appellants,

   v.

MORRISON & FRAMPTON, PLLP; CENTENNIAL
CONTRACTING AND DEVELOPMENT, LLC; and
LEONARD INVESTMENTS, LLC,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                 In and For the County of Flathead, Cause No. DV-11-948C
                 Honorable Stewart E. Stadler and Honorable Robert B. Allison,
                 Presiding Judges

COUNSEL OF RECORD:

      For Appellants:

      John Heenan, Bishop & Heenan, Billings, Montana

      For Appellee Morrison & Frampton, PLLP:

      Fred Simpson, Reep, Bell, Laird & Simpson, Missoula, Montana

      For Appellees Centennial Contracting and Development, LLC
      and Leonard Investments. LLC:

      Angela Jacobs Persicke, Marcel A. Quinn, Hammer, Jacobs
      & Quinn, PLLC, Kalispell, Montana

                             Submitted on Briefs:  October 8, 2014
                                   Decided:  December 2, 2014

Filed:

_____
                    Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Don and Susan Salminen appeal from the District Court's Order and Rationale on Motion to Dismiss, dated December 26, 2012, and the Order and Rationale on Motion for Judgment on the Pleadings, dated August 30, 2013. We reverse in part, affirm in part, and remand.

¶2    The issue on appeal is whether the District Court erred in dismissing the Salminens' complaint.

## BACKGROUND

¶3    The Salminens commenced this action with a complaint filed in August 2011, alleging wrongful levy, abuse of process, conversion and other claims. The District Court dismissed the Salminens' complaint against Morrison & Frampton concluding that the complaint failed to state a claim upon which relief can be granted, pursuant to M. R. Civ. P. 12(b)(6). Consideration of a motion to dismiss for failure to state a claim under M. R. Civ. P. 12(b)(6) is limited to an examination of the facts alleged in the complaint, and all well pled allegations of the complaint are to be taken as admitted and true. *Western Security Bank v. Eide Bailly, LLP*, 2010 MT 291, ¶ 55, 359 Mont. 34, 249 P.3d 35. Therefore, the following facts are taken from the allegations in the Salminens' complaint.

¶4    In November 2009 the defendants Centennial and Leonard obtained a judgment against the Salminens in the amount of $482,499.00 (Flathead County District Court Cause DV-08-667(A)). Defendant Morrison & Frampton law firm (Frampton)

2

represented Centennial and Leonard in that litigation. On December 7, 2009, Frampton requested and the District Court issued a writ of execution and garnishment. In December 2009 Frampton levied against certain assets (a bank account and wages) belonging to the Salminens with modest results.

¶5 On January 14, 2010, Salminens filed a notice of claimed exemptions and request for a hearing, supported by affidavits and a description of property that they claimed to be exempt from execution under §§ 25-13-608 and -609, MCA. They served these documents upon Frampton. On January 19, 2010, Frampton obtained a warrant of execution from the District Court based upon Frampton's supporting affidavit, and presented the warrant to the Flathead County Sheriff's Department. The affidavit in support of the warrant contained false statements of fact, including that the writ of execution had been returned unsatisfied; that there was no other property available to levy; that the judgment creditor was entitled to execute upon all of the Salminens' personal property, none of which was exempt from execution; that the warrant without notice to the Salminens was proper based upon a demand letter in 2007; and that the Salminens had paid nothing toward the judgment. Frampton did not file any copies of the application, affidavit or the warrant with the District Court.

¶6 On the morning of March 9, 2010, Frampton associate Joos met Flathead County Deputy Sheriff Tyler at the Salminen residence in Columbia Falls. Joos falsely told Tyler that the Salminens knew that a seizure would happen that morning but that he had no way to contact them. Deputy Tyler had a locksmith come to open a door and then entered the house with Joos, determining that no one was there. Joos then alerted a moving company

3

waiting nearby and directed them to remove the contents of the house. Deputy Tyler asked Joos what property was to be seized. Joos called Frampton who gave the direction to "take everything that is not nailed down." The movers then began to pack up the contents of the house at the direction of Joos, while Deputy Tyler remained primarily outside.

¶7 Several hours later the Salminens' granddaughter arrived at the house. Deputy Tyler told her that there was a court-ordered seizure and asked if she could contact the Salminens. The granddaughter called Don Salminen, and Deputy Tyler informed him what was happening, confirming that the Salminens had no knowledge that the seizure was taking place. Don Salminen asked his daughter to go to the house, and when she arrived she saw a man in a suit in her parents' house directing people who were packing the contents. The man said that he worked for Frampton, but soon left in a vehicle.

¶8 Sue Salminen arrived shortly thereafter distressed and crying. She saw a mover packing the pantry of canned food, including open boxes of food such as crackers and cereal. The walls, countertops, drawers and shelves had been stripped almost bare. The movers had left a phone book but had taken the phone, shoveling everything into boxes. Sue Salminen begged to keep a photo of her son in his border patrol uniform, and Deputy Tyler told her she could keep it. He also allowed her to keep the grandchildren's Easter baskets, some family photos and movies, and some batteries. Everything else was packed.

¶9 The Salminens' son-in-law arrived and asked Deputy Tyler about their food, clothes and medications, and how they were supposed to eat or get ready for work the

4

next day. Deputy Tyler stated that he had been instructed by Frampton to "take everything." When asked about food in a freezer, Deputy Tyler said that the "plan" was to take the appliances to a storage facility and plug them back in. Ultimately, Deputy Tyler convinced Frampton to allow the Salminens to take their food and game meat from the appliances. All of the furniture had been taken from the home, including the bed "and other medical equipment," forcing the Salminens to live with family members.

¶10 The next morning the Salminens' attorney went to the District Court to discover the circumstances of the seizure, but found that neither the District Court nor the Clerk of the Court had any information regarding Frampton's application, affidavit or the warrant. The Sheriff's Office knew about the seizure but did not have copies of the documents. At some point counsel obtained copies of the documents from Frampton and provided them to the District Court.

¶11 Frampton's movers placed all of the Salminens' property in a storage facility. The property included used and soiled clothing, dirty dishes from the kitchen sink; open boxes of perishable food; canned goods, plastic utensils, paper plates and Tupperware; the entire contents of the kitchen "junk drawer"; used toiletries, medications and eyeglasses; children's toys, crayons and coloring books; family heirlooms including the cremated ashes of Sue Salminen's aunt; and thousands of other articles of personal property that had no economic value and from which the judgment creditor could not realize any value. Frampton also took $5400 in cash that was not on the mover's inventory and was not given to the Sheriff's Office. Deputy Tyler counted the money and gave it to Joos, who took it with him when he left. Frampton put the money in the firm's trust account.

5

Salminens allege that Frampton seized virtually everything in their house, knowing it to be exempt from execution, to leverage a settlement of the judgment so that they could get back their personal property and avoid future harassment.

¶12   On March 25, 2010, Salminens filed and served a revised notice of claimed exemptions and renewed their request for a hearing, which occurred on April 6, 2010. Frampton did not disclose the seizure of the $5400 in cash from the Salminens' house, nor the approximately $1000 levied from their bank account and wages.  On April 21, 2010, Frampton filed a notice of partial satisfaction of the judgment reflecting the money levied from the bank account and wages.  On May 7, 2010, Frampton filed another notice of partial satisfaction reflecting seizure of the $5400 found at the house.

¶13   The District Court did not rule on the Salminens' claim for exemptions until July 13, 2010.  The District Court on that day held that *all* of the property seized in the March 9 event was exempt from execution and must be returned to the Salminens.  Frampton's mover did not return the Salminens' property for another three weeks, until August 4, 2010.

¶14   Frampton's clients Centennial and Leonard were aware of and participated in, directed, supervised or ratified Frampton's actions regarding the seizure of the contents of the Salminens' house.  The seizure and possession of the Salminens' exempt property was undertaken to leverage the Salminens and to coerce them to satisfy the underlying judgment so that they could get back their property and avoid such seizures in the future.

¶15   In August 2011 the Salminens filed the present action against Morrison & Frampton, Centennial, and Leonard.  The action asserted claims for violation of rights

secured by Article II of the Montana Constitution; for abuse of legal process; for conversion; for negligence, and for wrongful levy. Centennial and Leonard answered and cross-claimed against Frampton, contending that Frampton was "wholly and solely responsible" for the Salminens' damages.

¶16 The District Court granted Frampton's motion under M. R. Civ. P 12(b)(6) to dismiss the complaint for failure to state a claim. The District Court concluded that Frampton was only acting in the course and scope of its employment as the agent for Centennial and Leonard and, under general agency principles, was not liable on negligence claims because it had no duty of care to third persons.[1] The District Court concluded that the Salminens had no claim under the Montana Constitution because Frampton was acting as a private party and not as a state agent. The District Court concluded that Frampton's conduct did not constitute abuse of process as a matter of law because the Salminens had not properly alleged any ulterior purpose and because at the time of the seizure there had been no judicial determination that their personal property was exempt from execution. The District Court concluded that Salminens failed to state a claim for conversion because Frampton's seizure was made properly pursuant to a warrant of execution. Finally, the District Court concluded that even though the seizure here was "neither expedient nor compassionate," there was no wrongful levy because ex parte warrants of execution are allowed by statute and because the warrant of

---

[1] We have not addressed the District Court's conclusions that Frampton was only acting as an agent of its clients because it is clear that the District Court used that theory only to dispose of Salminens' negligence claim that they later dismissed.

execution was lawfully obtained. The District Court also denied the Salminens' request for an opportunity to file an amended complaint because there was no way they could state any claim against Frampton. The Salminens later voluntarily dismissed their negligence claim and it is not an issue on appeal.

¶17 Subsequently, Frampton's clients Centennial and Leonard moved for judgment on the pleadings. The District Court denied the motion as to the negligence claims (which the Salminens later dismissed), finding that the clients, as the principals of their agent Frampton, owed a "general duty of care" to the Salminens that could not be resolved on a motion for judgment on the pleadings. The District Court granted judgment on the pleadings to Centennial and Leonard on the remaining claims for the same reasons that were relied upon in dismissing the claims against Frampton.

## STANDARD OF REVIEW

¶18 This Court reviews de novo, to determine whether it is correct, a district court's decision on a motion to dismiss under M. R. Civ. P. 12(b)(6). *Ming Da Situ v. Smole*, 2013 MT 33, ¶ 11, 369 Mont. 1, 303 P.3d 747. This Court and the district court must accept as true the complaint's factual allegations, *Western Security Bank*, ¶ 55, considering them in the light most favorable to the plaintiff. *Tally Bissell Neighbors v. Eyrie Shotgun Ranch*, 2010 MT 63, ¶ 15, 355 Mont. 387, 228 P.3d 1134. A court may dismiss a complaint for failure to state a claim only if it appears beyond doubt that the plaintiff could prove no set of facts that would entitle him to relief. *Missoula YWCA v. Bard*, 1999 MT 177, ¶ 3, 295 Mont. 260, 983 P.2d 933.

8

**DISCUSSION**

¶19 *Issue: Whether the District Court erred in dismissing the Salminens' complaint.*

¶20 Rule 8(a), M. R. Civ. P., provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," along with a demand for the relief sought. The purpose of Rule 8(a) is to provide the defendant fair notice of the claim and the grounds upon which it rests, *Griffin v. Mosley*, 2010 MT 132, ¶¶ 38-39, 356 Mont. 393, 234 P.3d 869, so that the defendant may prepare a responsive pleading. *Larson v. Green Tree Financial Corp.*, 1999 MT 157, ¶¶ 34-35, 295 Mont. 110, 983 P.2d 357. *See, e.g.,* M. R. Civ. P., Appendix of Forms, Form 11, "Complaint for Conversion."

¶21 Proof of a claim for conversion requires that plaintiff own the property; that plaintiff have the right to possess the property; that defendant exercise unauthorized control over the property; and that plaintiff suffer damages. *Feller v. First Interstate Bancsystem*, 2013 MT 90, ¶ 26, 369 Mont. 444, 299 P.3d 338; *St. Peter & Warren v. Purdom*, 2006 MT 172, ¶ 19, 333 Mont. 9, 140 P.3d 478; *King v. Zimmerman*, 266 Mont. 54, 60, 878 P.2d 895, 899 (1994); *Farmers State Bank v. Imperial Cattle Co.*, 218 Mont. 89, 95, 708 P.2d 223, 227 (1985).[2] The Salminens' claim for conversion incorporated the facts summarized above and alleged that they "owned and were in lawful possession of the subject personal property," and the defendants "exercised unauthorized dominion"

---

[2] In *Trifad Entertainment, Inc. v. Joe Lee, Inc.*, 2001 MT 227, ¶ 38, 306 Mont 499, 36 P.3d 363, this Court recited the elements of a claim for conversion, adding that "[t]here must be a transfer of ownership for a claim of conversion to exist." The opinion cited the *Farmers State Bank* case, which noted the necessity of a transfer of ownership, but only in the context of the facts of that case. The "transfer of ownership" language in the *Farmers State Bank* case is not otherwise an element of a claim for conversion and we repudiate the contrary statement in *Trifad*.

over it. They alleged they had suffered damages as a result of unlawful conversion and that they would seek damages to be determined by a jury.

¶22 The District Court dismissed the Salminens' claim for conversion because Frampton "exercised authorized control over the Plaintiffs' property pursuant to a writ of execution and obtained the right to enter Plaintiffs' premises under a warrant of execution." The District Court discounted the fact that Frampton held the property for six months because the Salminens' claim to exemption from execution was nothing but a "conclusion of law" until they obtained an order that the property was exempt and must be returned. The District Court concluded that the Salminens failed to state a claim for conversion as a matter of law.

¶23 The District Court erred in determining that the Salminens failed to state a claim for conversion. The process of executing upon a judgment debtor's assets is controlled by statute. A writ of execution is issued in the name of the State of Montana, and is directed to a "sheriff or levying officer." Section 25-13-301, MCA. The writ allows a levy or seizure of assets, as was done in this case against the Salminens' bank account and wages. A judgment debtor can claim the right to certain exemptions from execution for personal property, § 25-13-609, MCA, by filing a claim for exemption with the district court, § 25-13-212, MCA. The Salminens did so in this case, and just a few days later Frampton appeared at their house and seized their possessions. Under § 25-13-212(3), MCA, the Salminens were entitled to a hearing on the claims for exemption within ten days. In fact, although they requested a hearing, the District Court did not hold one for almost three months. The decision on their request for exemption

was not rendered for several more months, but was ultimately in favor of the Salminens. This failure to conduct a hearing and to promptly render a decision on the exemption issue after the hearing clearly hampered the Salminens' efforts to regain their personal property.

¶24 While a personal property exemption can be lost if the owner does not assert it, § 25-13-212(2), MCA, *In re Estate of Sandvig*, 250 Mont. 220, 223, 819 P.2d 184, 186 (1991), exemptions from execution are rooted in the Montana Constitution. Article XIII, Section 5 requires that the Legislature enact liberal exemption laws and it is well established that those laws will be liberally construed in favor of the debtor. *In re Maynard*, 2006 MT 162, ¶ 4, 332 Mont. 485, 139 P.3d 803. One of the purposes of statutory exemptions from execution is to protect debtors from becoming entirely destitute. *Bank of America v. Ivey*, 2010 MT 131, ¶ 8, 356 Mont. 388, 234 P.3d 867. Debtors have a property interest in statutory exemptions from execution. *Dorwart v. Caraway*, 2002 MT 240, ¶ 20, 312 Mont. 1, 58 P.3d 128.

¶25 A judgment creditor may enter a debtor's home to seize and execute upon personal property only by obtaining a warrant of execution as provided in § 25-13-213, MCA. The statute provides that if there is "reason to believe that there is personal property subject to execution" in the debtor's residence, the creditor may "file" an application for a warrant with the district court. The application must be supported by an affidavit stating that the writ of execution has been issued and returned unsatisfied in whole or in part; that the affiant has reason to believe that there is "property subject to execution" in the debtor's residence; that there is no other property available for levy and execution;

11

and describing the property sought. If the "judge" determines that reasonable cause exists, the judge may issue a warrant authorizing entry into the residence and seizure of the property. Section 25-13-213(2), MCA. In the present case the Salminens' claims that their property was wrongfully seized rely upon their allegations of Frampton's failure to follow these requirements and they allege that he falsified the affidavit supporting the warrant. They allege that Frampton procured the warrant of execution not because he had actual reason to believe that property in their home was subject to execution as required by the statute. Rather, they allege that Frampton procured the warrant with the plan to seize all of their personal property so that they would provide other assets to satisfy the judgment, and so that they would not have to endure future seizures of their property.

¶26     It is clear that under § 25-13-213, MCA, the judgment creditor seeking a warrant has a burden to determine that there is personal property in the debtor's home and that the property is subject to execution.[3] At the time Frampton obtained the warrant and entered the Salminens' home they had filed their claim of exemption pursuant to the statute and had requested a hearing. Frampton knew or should have known that much of the property in the home was covered by the exemption claim.

¶27     If the Salminens can prove the allegations in their complaint, they may be able to establish that the entry into their home and seizure of the property was not authorized by law. Therefore there are facts which, if proven, could establish that there was conversion

---

[3] Neither Frampton's affidavit nor the warrant is in the record on appeal. According to the Salminens' allegations, Frampton did not file the application for the warrant as required by § 25-13-213(1), MCA.

12

of the Salminens' property. The District Court erred in determining that as a matter of law the Salminens could not establish conversion and that claim should not have been dismissed.

¶28 The Salminens contend that the District Court should not have dismissed their claim for abuse of process. The complaint, after incorporating the facts noted above, alleges that there was an abuse of process because Frampton filed an affidavit containing false statements and had an ulterior purpose in taking the Salminens' property that Frampton knew was exempt. The ulterior motive was to "leverage [Salminens'] settlement position and coerce them to come up with the money to satisfy the civil judgment in order to get their exempt personal property back and avoid further judgment creditor harassment." The property that Frampton seized from the house, if sold, would have provided little if any actual money that could be applied to satisfy the large judgment against the Salminens.

¶29 A successful claim for abuse of process depends upon proof that the defendant made a "willful use of process not proper in the regular conduct of the proceeding, and that the process was used for an ulterior purpose." *Spoja v. White*, 2014 MT 9, ¶ 19, 373 Mont. 269, 317 P.3d 153; *Seltzer v. Morton*, 2007 MT 62, ¶ 57, 336 Mont. 225, 154 P.3d 561. The legal process must be "put to a use perverted beyond its intended purpose." *Brault v. Smith*, 209 Mont. 21, 29, 679 P.2d 236, 240 (1984). An abuse of process may occur when a party uses process to coerce another to "do some collateral thing [that he] could not be legally and regularly compelled to do." *Judd v. Burlington Northern*, 2008

MT 181, ¶ 24, 343 Mont. 416, 186 P.3d 214.[4]  In *Hopper v. Drysdale*, 524 F. Supp. 1039 (D. Mont. 1981), the Court concluded that plaintiff had stated a claim for abuse of process when he was subpoenaed for a deposition in one case so that he would be subject to arrest for a contempt citation issued in a separate case.

¶30    The District Court determined that as a matter of law the Salminens had not stated a claim for abuse of process.  The District Court determined that there is nothing ulterior about seeking to satisfy a civil judgment; that Frampton was only pressing "valid legal claims" to a "regular conclusion," and that the Salminens' mere assertion that their property was exempt does not make it exempt.  While it is certainly true that seeking to satisfy a valid judgment is not a basis for a claim of abuse of process, that is not the Salminens' contention in this case.  As discussed above in regard to the conversion claim, the contention in this case is that Frampton wrongfully obtained a warrant that authorized entry into the Salminens' home, and that after entry he seized clearly exempt property of minimal value to essentially hold the property hostage.  They contend that Frampton did

---

[4] In *Judd* and other cases this Court has implied that the tort of abuse of process requires in all cases that the plaintiff be compelled to do something that he could not legally and regularly be compelled to do.  That language can be traced to the *Brault* case in 1984, which first recognized the tort in Montana, citing Prosser, *Law of Torts*, 4th Ed., 857 (1971), as explained in more detail in *Hughes v. Lynch,* 2007 MT 177, ¶ 21, 338 Mont. 214, 164 P.3d 913.  While the *Brault* opinion adopted the two elements of the tort—ulterior purpose and use of process not proper in the regular course of the proceeding—the opinion also stated that there "*must be*" a use of the process to compel that which the victim was not otherwise required to do.  *Brault,* 209 Mont. at 29, 679 P.2d at 240 (emphasis added).  The sources for that apparent third element of the tort were *Crease v. Pleasant Grove City*, 519 P.2d 888 (Utah 1974) and *Batten v. Abrams*, 626 P.2d 984 (Wash App. 1981).  Neither of those cases, however, adopts wrongful compulsion as a third element of the tort.  Rather, in those cases wrongful compulsion was given as an example of a situation in which abuse of process could be established.  We clarify that abuse of process may be pled and established by the two essential elements: willful use of process not proper in the regular conduct of the proceeding, for an ulterior purpose.

14

this to force them to do something to pay the underlying judgment in order to get back their exempt property and to avoid Frampton's conducting such entries and seizures in the future.

¶31 The Salminens' claims of abuse of process and conversion are bolstered by Frampton's alleged conduct of seizing virtually everything in the home down to the bare walls with little or no thought of its probable exemption or value. Seizure of the cremated remains of a family member, used clothing, food, medications and such clearly has nothing to do with a genuine attempt to satisfy a very substantial judgment. The Salminens stated a claim for abuse of process by alleging that Frampton used the execution process as a "threat or a club" (*Hughes*, ¶ 22, quoting from Prosser, § 121 at 857) to deprive them of personal property that the law protects as basic life necessities, in order to coerce payment. The abuse of process claim should not have been dismissed because there are facts that, if proved, would entitle the Salminens to relief. The District Court erred in dismissing the claim.

¶32 The District Court also dismissed the Salminens' claim of wrongful levy, concluding that Frampton "lawfully obtained" the writ of execution and that the claim turned upon whether the Salminens received advance notice of the seizure. Montana law recognizes a claim for "wrongful levy" where assets are wrongfully seized to satisfy a judgment. *Foley v. Audit Services*, 214 Mont. 403, 407, 693 P.2d 528, 530-31 (1985).

¶33 As discussed above, the Salminens' allegation is that Frampton failed to comply with the requirements of § 25-13-213, MCA, in obtaining the warrant that was used to gain entry into their home. If they prove their allegations then the warrant may not have

15

been "lawfully obtained" and the seizure may have been unauthorized. While it appears that a wrongful levy claim could be subsumed within the claims for conversion and abuse of process, the District Court erred in dismissing the claim at this early stage of the case.

¶34 Finally, the District Court dismissed the Salminens' claim for a cause of action to vindicate rights under Article II, Sections 10, 11 and 17 of the Montana Constitution. The Salminens claim that their constitutional rights were violated because the warrant was procured ex parte, without notice. This case turns upon Frampton's conduct in obtaining and executing the warrant. It does not involve the validity of the underlying judgment against the Salminens or the fact that the warrant was obtained without prior notice. No such notice is required, although notice of any seizure must be provided to the debtor within five days. Section 25-13-211, MCA. There is no requirement for notice prior to obtaining a warrant of execution and so this allegation does not state a claim. The Salminens also contend that their constitutional rights were violated because Frampton kept their property for an unreasonable length of time after seizure. This can be considered as part of their conversion claim or any damages arising therefrom. Since the Salminens have a basis in law for a claim to redress this allegation, they need not proceed under the Constitution. *Sunburst School Dist. v. Texaco*, 2007 MT 183, ¶ 64, 338 Mont. 259, 165 P.3d 1079. The District Court therefore properly dismissed the Salminens' claim under the Montana Constitution.

¶35 The District Court granted judgment on the pleadings to Centennial and Leonard, finding that the complaint failed to state claims against them for the same reasons that it

16

failed to state a claim against Frampton. For the same reasons discussed above, this was error.

¶36   For the reasons stated above the District Court is affirmed in part, reversed in part and this case is remanded for further proceedings.


                                    /S/ MIKE McGRATH


We Concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA