FILED

June 16 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0183

DA 14-0183

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 162

ALLSTATE INSURANCE COMPANY,

      Plaintiff and Appellee,

    v.

POSNIEN, INC.,

      Defendant, Counterclaimant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV 11-1297A
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Amy Poehling Eddy (argued), Law Office of Amy Eddy, PLLC, Kalispell,
Montana

      For Appellee:

          Peter F. Habein, Kimberly S. More (argued), Crowley Fleck, PLLP,
Billings, Montana

                        Argued and Submitted: December 10, 2014
                               Decided: June 16, 2015

Filed:

_____
                      Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Posnien, Inc., appeals from the entry of judgment by the Eleventh Judicial District Court, Flathead County, finding that Posnien lacked "rights in the collateral" of the economic interest in the Allstate agency sold to Baird 7, and therefore cannot sustain a claim for conversion against Allstate. We reverse and remand for further proceedings, addressing the following issue:

¶2 *Did the District Court err in determining that Posnien retained no security interest in the Allstate agency book of business sold to Baird 7 pursuant to the terms of Allstate's Contract Documents?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Fay Mason Posnien was an Exclusive Agent for Allstate, her office located in Kalispell. In 2000, Fay incorporated Posnien, Inc., after Allstate informed her it would no longer permit agencies to operate as sole proprietorships. In 2006, Fay decided to sell the agency and retire. After Allstate placed an advertisement on its website listing the agency for sale, Mary Baird, incorporated as Baird 7, offered to purchase the agency from Posnien for $450,000.

¶4 Prior to selling the agency, Posnien was required to obtain Allstate's approval of Baird 7 as the purchaser and the terms of the agreement. The process of obtaining Allstate's approval required the involvement of Allstate's Montana Field Manager, Mike Brown. During the process, Brown provided Baird with documents showing the agency's history of revenue and expenses, while Baird provided Brown with a proposed business plan. Additionally, Brown reviewed Baird's tax returns and other financial documents. Beyond the exchange of documents, Brown conducted personal interviews

2

with Baird to determine whether he believed she would be successful as an Allstate agent. Following the process, Brown wrote a letter to Allstate recommending approval of the transaction, and Allstate ultimately approved transfer of the agency.

¶5    Under the agreement between the parties, Baird 7 agreed to make a $150,000 down payment. To make this payment, Baird 7 obtained a loan from Kenneth and Gretchen Gose, while Posnien agreed to finance the remainder of the purchase price. The book of business, understood as an agency's "customer accounts," was valued at $435,000 by the Buy-Sell Agreement.

¶6    On March 1, 2007, the sale closed and Baird became an Exclusive Agent for Allstate. To become an Exclusive Agent, Mary Baird executed an Exclusive Agency Agreement (Agreement) with Allstate on behalf of Baird 7, incorporating by reference the Exclusive Agency Independent Contractor Manual (Manual). Under the Agreement, an agent owns an "economic interest" in the agency's book of business, which may be used as collateral for business loans, although ownership is retained by Allstate. Part of the agent's economic interest includes the option to receive termination payments at the time an agent decides to end her affiliation with Allstate. Pursuant to the Agreement, Baird collateralized her right to receive termination payments to secure a loan from the Goses. Baird similarly granted Posnien a security interest in the book of business. Baird executed a UCC Financing Statement at the time of closing, stating that Posnien had a security interest in the book of business along with all assets owned by the Baird 7

agency. On March 2, 2007, Posnien filed the statement with the Secretary of State and the Flathead County Clerk and Recorder.[1]

¶7 The agency continued to be successful following the transfer until Baird's termination as an agent on April 11, 2011. Under the Agreement, any agency relationship may be terminated for cause in instances of fraudulent conduct. Allstate learned Baird had falsified the date of loss on a claim for damage to her own boat under a personal Allstate policy. In response to Baird's fraudulent claim, Allstate immediately closed the Baird 7 agency pursuant to the Agreement's termination provisions and "parked" the book of business at the Pete Russell Allstate agency. In moving the book of business, comprised of approximately 1,400 policies, Allstate placed all of Baird 7's paper files with the Russell agency and changed its computer system to allow access to the electronic files by Russell. Allstate made no more commission payments to Baird 7. Baird 7 made its final payment to Posnien in April 2011, still owing more than $280,000 on the debt to Posnien.

¶8 Under the Agreement, Allstate gave Baird 7 the option of either transferring its economic interest to an approved buyer or receiving a termination payment from Allstate. Baird 7 was given 90 days to sell the agency but failed to do so and subsequently opted to receive a termination payment in the amount of $148,174.69. Because Posnien and the Goses disputed whose lien had priority to the termination payment, Allstate withheld its disbursement of the funds and filed a Complaint in Interpleader on October 11, 2011, to

---

[1] Allstate does not contest that Posnien's security interest was properly perfected and attached at the time of sale. The dispute concerns the validity of Posnien's interest following Baird 7's termination as an agent.

4

determine the rights of the parties. Posnien then filed a counterclaim against Allstate, alleging conversion (by interfering with its security interest and withholding commission payments) and interference with contractual relations. Posnien similarly counterclaimed against Baird 7, asserting Breach of Contract, Forgery, and Breach of the Covenant of Good Faith and Fair Dealing. In turn, Baird 7 filed counterclaims against Allstate, including Conversion, Intentional Interference with Prospective Advantage, Invasion of Privacy, Violation of the Montana Insurance Information and Privacy Protection Act, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress.

¶9 The Goses and Posnien subsequently entered into a settlement in which the Goses took 2/3 of the termination payment while Posnien received the remaining 1/3. As part of the settlement, Baird 7 assigned all of its claims against Allstate to Posnien, while Posnien agreed to dismiss all claims against Baird 7. Finally, while the settlement stipulated Allstate would no longer be subject to claims regarding the termination payments, Posnien retained the right to pursue any independent claims it had against Allstate, including those assigned by Baird 7. Posnien exercised this right under the settlement agreement and pursued its remaining claims against Allstate.

¶10 On March 4, 2013, Posnien filed a motion for partial summary judgment on the claim of conversion. Allstate likewise filed a motion for summary judgment seeking dismissal of Posnien's claim. Following a hearing, the District Court entered an order denying Posnien's motion and granting Allstate's. Posnien appeals.

## STANDARD OF REVIEW

¶11 This Court Reviews a district court ruling on summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as a district court. *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839. This Court must determine whether the district court applied the law correctly. *Germann v. Stephens*, 2006 MT 130, ¶ 21, 332 Mont. 303, 137 P.3d 545.

## DISCUSSION

¶12 *Did the District Court err in determining that Posnien retained no security interest in the Allstate agency book of business sold to Baird 7 pursuant to the terms of Allstate's Contract Documents?*

¶13 As the District Court stated, the central issue in this case is the scope of the security interest that Posnien was granted when it sold its economic interest in the agency book of business to Baird 7, specifically, what secured interest, if any, survived the termination of Baird 7's economic interest in the agency. Citing § 30-9A-203(2)(b), MCA, which provides that a debtor may grant a security interest in collateral if the "debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party," the District Court concluded that because Baird 7's interest was limited to a termination payment, Posnien retained no further "rights in the collateral" beyond the termination payment. Reasoning that "Baird 7 never possessed the right that would have entitled it to receive commission payments after it was terminated for cause," the court concluded that Posnien was likewise not entitled to future commission payments.

¶14 Posnien has argued that its right to secure its interest encompassed the termination payment, ongoing commissions generated by the policies, and an economic interest in the

6

agency book of business it sold to Baird 7. Posnien offers that, under Allstate's contractual documents, an agent such as Baird 7 had rights in the book of business for use as collateral for a business loan from a lender, or to grant a security interest, as purchaser, to the seller of the book of business. During oral argument, Posnien slightly altered, or at least placed a different emphasis on, its position, conceding that the right to a security interest in renewal commission payments ended when Baird 7 lost the right to those payments upon termination of Baird 7's agency. However, Posnien continues to argue that its security interest in the economic interest of the book of business was more expansive than those commissions alone or the termination payment Baird 7 received, arguing that "Posnien has a security interest, not just in the collateral, but in any proceeds generated from the collateral," citing the UCC. Section 30-9A-315(1)(a)(b), MCA, provides that a secured party's interest "continues in collateral notwithstanding sale, lease, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest," and also "attaches to any identifiable proceeds" from the collateral. *See also* § 30-9A-315, MCA. Posnien thus argues that its lien attached to the revenue Allstate is receiving from the proceeds that are being generated by the policies that have been parked by Allstate with a different agency.

¶15 Central to the resolution of this case are Allstate's contractual documents controlling the parties' legal relationships. While the question presented initially appears to sound in secured transactions, it is more appropriately characterized as one of contract. Allstate created an alternate universe of finance to govern the relationships between itself and its agents, as well as between agents, with its own guarantees, terminology and

7

restrictions. It retained the ownership of the agency book of business, but permitted agents to hold an economic interest in the book of business, and incorporated selected legal principles regarding secured sales to govern agency-related financial transactions. Thus, usual principles governing secured transactions are circumscribed by the limited fashion in which they were incorporated into this contractual world. To "sell" an agency or an agency book of business is a relative term premised upon Allstate's actual ownership of the book of business. Posnien, Baird, and Allstate were bound together through various contractual documents, most prominently the previously-mentioned Exclusive Agency Agreement (Agreement), the Exclusive Agency Independent Contractor Manual (Manual), and their Supplements, generally referred to herein collectively as the "Contract Documents," which must be examined holistically to determine the parties' rights.

¶16 Of primary importance is the Manual's section entitled "Economic Interest in the Book of Business," which defines an agent's economic interest in her business as comprised of two elements:

> You have an economic interest in the Allstate customer accounts developed under [the Contract Documents]. That economic interest is a specifically defined, limited interest. Subject to the terms and conditions set forth in [the Contract Documents], your economic interest in the business is comprised of only two elements:
>
> - First, the economic interest includes the option, where applicable, of Receiving a Termination Payment according to the terms of [the Contract Documents].
>
> - Second, the economic interest includes the ability, subject to approval of the company and other provisions of [the Contract

8

> Documents], to transfer your interest as provided in the [Agreement].

> No other rights are included within the terms "your economic interest" or "economic interest in the book of business". . . . You do not have any right to renewals or renewal commissions of any kind after termination of [the Agreement].

Of note, this definition of an agent's economic interest in the book of business was provided by Allstate to *both* Posnien and Baird 7.

¶17 Readily apparent from a reading of this provision is that the economic interest in the book of business does not include "renewals or renewal commissions of any kind *after termination*." A similar provision is included in the termination for cause provisions of the Manual. Posnien's argument, as refined, acknowledges that commissions are designed, as provided in the Agreement, to compensate the agent "for services rendered," and therefore terminate upon termination of the agent's Agreement with Allstate. Although commissions are included within the economic interest of the book of business while the Agreement is in effect, and an agent may then "assign a portion of his commission to a lender" under separate Manual provisions governing the assignment of commissions, the right to receive commissions ends upon termination of the agency Agreement. Thus, according to the Manual, Posnien's right to receive commissions as compensation ended with the termination of Posnien's Agreement upon the sale of the book of business to Baird 7, and Baird 7's right to receive commissions, as well as Posnien's right to lien Baird 7's commissions, ended upon termination of Baird 7's Agreement. Under these clear terms, Posnien has no security interest in the commission stream.

9

¶18   We return to the question of what Posnien's economic interest in the book of business consisted of under the Contract Documents.[2]   Subject to Allstate's approval of each transaction, the Agreement authorized agents to initiate a "sale, merger, or assignment" as well as a "conveyance, or the granting of [a] lien, security interest, pledge, or mortgage" of the economic interest.  *See also*, Manual, p. 39 ("you may sell your economic interest in the book of business serviced by your agency at any time provided the Company approves the buyer.").  The authorization to assign the economic interest in the book of business also includes, under separate contract provisions, the ability to collaterally assign the agent's commissions, the termination payment, and the proceeds of a sale of the economic interest in the book of business.  These provisions are followed by further statements applicable to loan collateralizations.  They provide that "[t]he Company will *not approve* an assignment *of your entire agreement* as security for a loan," and that, "if you assign your rights to the termination payments in order to secure a loan, you must disclose any such assignment, in writing, *to any buyer of your economic interest in the book of business*." (emphasis added).  Another section similarly provides, "if you assign your rights to your Termination Payment *or commissions*, you must disclose any such assignment to any buyer of your economic interest in the book of

---

[2] Posnien and Baird 7 entered a Buy-Sell Agreement that provided for sale of Posnien's "entire book of insurance business," valued at $435,000, to Baird 7, and the granting of a security interest therein to Posnien.  Baird 7, as buyer and debtor, executed a UCC Financing Statement indicating that seller Posnien had a security interest in "Debtor's book of insurance business pertaining to Debtor's Allstate insurance agency in Kalispell, Montana."  At oral argument, Allstate acknowledged that the book of business referenced in the Posnien-Baird 7 sales documents equated to the "economic interest in the book of business" referenced in the Contract Documents.

business." (emphasis added). This language demonstrates that an agent's entire economic interest in the book of business is more expansive than the right to receive commissions or the right to receive a termination payment. An agent can collateralize either her commissions or termination payment, and still sell her economic interest in the book of business, although she is required to notify the buyer of those outstanding liens. This demonstrates that, as argued by Posnien, the economic interest in the book of business is an asset that, while owned by Allstate, can provide value for the agent beyond sales commissions or a termination payment. While all of these options are not necessarily cumulative, it is clear that an agent is given the option under the Contract Documents of securing the value of her book of business upon sale to a willing buyer by taking a security interest in the book of business, which Posnien did, and which Allstate approved. Under the Contract Documents, Posnien thereby surrendered her rights to further commissions, as noted above, and a termination payment. *See* Manual, p. 39 ("If you elect to sell, you do not receive the termination payment from Allstate."); p. 44 ("The termination payment will not apply if you sell your economic interest in the book of business.").

¶19 Intervening in this transaction was the fraudulent action committed by Baird a few years later, and Allstate's termination of Baird 7's agency Agreement, in which Baird 7 exercised its option to receive a termination payment. Like the District Court, Allstate relies on § 30-9A-203(2), MCA, which provides that a security interest is enforceable only if "the debtor has rights in the collateral," and argues that "any security interest that Baird 7 granted to Posnien was limited to the extent of Baird 7's rights" in the book of

11

business. Because Baird 7's right was limited by the Contract Documents to the options of selling the book of business to a buyer approved by Allstate or accepting a termination payment, which right was satisfied by the termination payment, Allstate argues that Posnien was left without recourse to secure payment of the balance of its secured debt. Allstate offers that it "bears no responsibility for Baird 7's failure to make the required loan payments or Posnien's poor business decision." Allstate thus takes the position that Baird 7's acceptance of a payment from Allstate terminated not only Baird 7's economic interest in the book of business, but also Posnien's remaining economic interest in the book of business. Allstate's argument is flawed for several reasons.

¶20 Allstate's argument may be persuasive if this were an arm's-length transaction within a free market. However, this transaction occurred within Allstate's closed contract world wherein it had placed limitations upon, and made promises to, the agents. In the Manual, Posnien was promised that "[y]ou will have an economic interest in the Allstate customer accounts you develop" and "[y]ou are able to realize such interest upon the termination of your [Agreement]." To "realize" her interest as promised by Allstate, Posnien surrendered her rights to ongoing commissions and to a termination payment and instead chose another option granted by Allstate, as discussed above, to sell and take a security interest in her economic interest in the book of business. As stated in the defined economic interest provision, Posnien's interest "include[d] the ability, subject to [the Contract Documents], to transfer your interest. . . ." That "ability" included the right to secure her interest in the book of business.

12

¶21 This "ability" was made subject to the Contract Documents, which Allstate argues limited Baird 7's interest under the termination procedure commenced for the fraud and thereby likewise limited Posnien's secured interest in Baird 7's interest. However, in stark contrast to the provisions clearly stating that the right to receive commissions and the option to receive a termination payment end upon termination of an agent's economic interest, nothing in the Contract Documents remotely suggests that a selling agent's broader secured interest in a book of business was subject to forfeiture upon a subsequent decision by Allstate to terminate the buying agent's interest in the book of business or, in other words, that the termination of Baird 7's defined economic interest by way of the termination procedure would also extinguish Posnien's defined economic interest. Indeed, Posnien had every reason to understand just the opposite.

¶22 First, as mentioned above, the Contract Documents clearly provided Posnien a defined economic interest and promised that she would be able to "realize" this interest. This was a contractual promise to Posnien that was separate from Allstate's contractual promise to Baird 7. Both were given the limited options by Allstate of either taking a termination payment or selling their interest to another approved buyer while retaining a secured interest. Baird 7 took the payment, while Posnien took the secured interest. Then, as Posnien notes, § 30-9A-315(1)(a), MCA, provides that a security interest "continues in collateral notwithstanding sale, lease, license exchange, *or other disposition thereof* unless the secured party authorized the disposition free of the security interest. . . ." (emphasis added). As a general rule of law, Posnien's secured interest followed the collateral. There was particularly no concern over the collateral's

13

disposition here, where the book of business, though retaken by Allstate from Baird 7, was part of a closed contractual system and remained in Allstate's ownership and possession—the accounts weren't going anywhere. It was incumbent upon Allstate, if it intended Baird 7's termination payment to extinguish Posnien's security interest, to either contractually provide for the same, or to obtain Posnien's release of her interest under § 30-9A-315(1)(a), MCA. Lastly, the Contract Documents provided that secured interests would be honored. The Manual's section entitled "Transfer of Economic Interest" requires that "any business loan secured by your rights and economic interest in the business" must be repaid before an economic interest can be transferred. This is consistent with the provisions, discussed above, that any secured interests in the economic interest of the agent must be disclosed to a buyer. Clearly, Posnien's interest was not exclusively hitched to Baird 7's wagon.

¶23    These provisions did not make Allstate the guarantor of the debt owed to Posnien by Baird 7. Posnien took the risk that the book of business she had sold would have sufficient value to generate proceeds to pay the debt, a risk taken upon the promise of Allstate, as owner of the book of business, that Posnien could maintain a security interest in the book of business, and upon Allstate's approval of the transaction. Posnien also took the risk that Baird 7 would not be a successful agent, but that risk, including the possibility of Baird 7's contractual termination, was likewise balanced by the legal right to maintain a secured interest in the collateral in the event Baird 7 failed.

14

¶24    Posnien's rights upon disposition of the collateral under § 30-9A-315(1)(a), MCA, were not honored by Allstate and, as explained in the Official Comments to that section, the remedies for this violation include:

> [This section] contains the general rule that a security interest survives disposition of the collateral.  In these cases, the secured party may repossess the collateral from the transferee or, in an appropriate case, maintain an action for conversion.  The secured party may claim both any proceeds and the original collateral but, of course, may have only one satisfaction.

Official Comment 2, § 30-9A-315(1)(a), MCA.  Here, Posnien has pursued a conversion action.

¶25    "Proof of a claim for conversion requires that plaintiff own the property; that plaintiff have the right to possess the property; that defendant exercise unauthorized control over the property; and that plaintiff suffer damages." *Salminen v. Morrison & Frampton, PLLP*, 2014 MT 323, ¶ 21, 377 Mont. 244, 339 P.3d 602.  Posnien's position in holding an economic interest in the book of business, having the right, as secured creditor, to possess, upon default of its agreement with Baird 7, the book of business, and Allstate's unauthorized control over the book of business by excluding it from Posnien after Baird 7's default, satisfies the liability elements of conversion.

¶26    Allstate's termination payment made to Baird 7 was potentially applicable to Posnien's lien, but Allstate chose not to honor the lien and, in any event, the payment was of insufficient amount to satisfy the lien.  However, this payment may be credited to Allstate in a calculation of damages for conversion.

15

¶27 The District Court concluded that, even if Allstate had not prevailed on its motion for summary judgment on conversion, Posnien's motion would be denied because genuine issues of material fact exist regarding "whether Goses or Posnien had the superior security interest, and thus the priority position to receive any assets from Baird 7." It appears from the record that Goses claimed only entitlement to the termination payment, and that their claim was resolved by the settlement providing for distribution of that payment. Further, both Allstate and Posnien have indicated in their briefing that all claims of all parties, with the exception of Posnien's counterclaim for conversion, have been settled.

¶28 Therefore, the entry of summary judgment in favor of Allstate is reversed and this matter is remanded for entry of partial summary judgment on liability in favor of Posnien, and for further proceedings consistent with this opinion for calculation of damages.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT

16